**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| JAMES CELESTE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO,<br><br>Defendants. | § CIVIL ACTION NO. 4:21-cv-00307-SDJ<br>§ **[LEAD CASE]**<br>§<br>§<br>§<br>§ CLASS ACTION<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |
| GEORGE NEELY and JOAN NEELY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO,<br><br>Defendants. | § CIVIL ACTION NO. 4:21-cv-00374-SDJ<br>§ **[CONSOLIDATED]**<br>§<br>§  CLASS ACTION<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**REVISED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

i

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................ 1

II.  OVERVIEW OF THE LITIGATION ........................................................................... 2

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..................................... 2

IV.  THE SETTLEMENT MEETS THE RULE 23(e)(2) AND *REED* FACTORS ...................... 3

      A.   Plaintiff and Counsel Have Adequately Represented the Settlement Class ........... 3

      B.   The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion ............................................................. 4

      C.   The Relief Provided for the Settlement Class is Adequate Considering the Duration, Costs, Risks, and Delay of Trial and Appeal ............................................................. 4

      D.   The Stage of the Proceedings and the Amount of Discovery Completed .............. 6

      E.   The Probability of Plaintiff's Success on the Merits ............................................. 6

      F.   The Range of Possible Recovery ............................................................................ 8

      G.   The Opinions of the Participants ............................................................................ 8

      H.   All Settlement Class Members Are Treated Equitably ........................................... 9

      I.   Other Factors Established by Rule 23(e)(2)(C) Support Approval ........................ 9

IV.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................................... 11

V.   THE FORM AND METHOD OF THE NOTICE SHOULD BE APPROVED ................... 13

VI.  PROPOSED SETTLEMENT SCHEDULE ....................................................................... 14

VII. CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) .................................................................. 19

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221, 235 (5th Cir. 2009) ............................................................................. 7

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) .................................................... 14

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591, 625 (1997)........................................................................................... 16

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) ............................................. 12, 16

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641, 651 (N.D. Tex. 1978) ......................................................................... 7

*Cotton v. Hinton*,
   559 F.2d 1326, 1331 (5th Cir. 1977) ................................................................. passim

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269, 287 (W.D. Tex. 2007) ...................................................................... 9

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156, 174 (1974)........................................................................................... 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018)............................................. 5, 14

*Fishoff v. Coty Inc.*,
   2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)............. 9

*Frost v. Oil States Energy Servs.*,
   2015 WL 12780763, at *2 (S.D. Tex. Nov. 19, 2015)............................................... 14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408, 413-414 (7th Cir. 2015) ....................................................................... 7

*Hays v. Eaton Grp. Attorneys, LLC*,
   2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) .................................................... 4, 5

*In re Arthrocare Corp. Sec. Litig.*,
   No. A-08-CA-574-SS, 2012 WL 12951371, at *5 (W.D. Tex. June 4, 2012) ........... 9

*In re Cendant Corp. Litig.*,
264 F.3d 201, 239 (3d Cir. 2001)................................................................. 11

*In re Chesapeake Energy Corp.*,
2021 WL 4776685, at \*5 (S.D. Tex. Oct. 13, 2021).............................................. 3, 8

*In re China Med., Corp. Sec. Litig.*,
No. 8:11-1061-JST (ANX), 2013 WL 12126754, at \*5 (C.D. Cal. May 16, 2013) ................... 5

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195, 208 (5th Cir. 1981) ...................................................................... 4, 8

*In re Dell Inc.*,
No. A-06-CA-726-SS, 2010 WL 2371834, at \*8 (W.D. Tex. June 11, 2010) .......................... 8

*In re Enron Corp.*,
2003 WL 22494413, at \*3 (S.D. Tex. July 24, 2003)............................................... 18

*In re Forterra Inc. Sec. Litig.*,
No. 3:18-CV-01957-X, 2020 WL 4727071, at \*2 (N.D. Tex. Aug. 12, 2020) ....................... 19

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088, 1105 (5th Cir. 1977) ................................................................. 18

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. CIV.A.05-2165, 2009 WL 512081, at \*13 (E.D. La. Mar. 2, 2009)................................ 10

*Maher v. Zapata Corp.*,
714 F.2d 436, 455 (5th Cir. 1983) ...................................................................... 2

*Marcus v. J.C. Penney Co., Inc.*,
2017 WL 6590976, at \*3 (E.D. Tex. Dec. 18, 2017)................................................ 11

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 233-34, 245 (E.D. Mich. 2016).............................................................. 13

*O'Donnell v. Harris Cty., Texas*,
2019 WL 6219933, at \*9 (S.D. Tex. Nov. 21, 2019)................................................ 3

*Reed v. Gen. Motors Corp.*,
703 F.2d 170, 172 (5th Cir. 1983) ...................................................................... 3, 9
*Robbins v. Koger Props., Inc.*,
116 F.3d 1441, 1446, 1449 (11th Cir. 1997) ........................................................ 10

*Rooney v. EZCORP, Inc.*,
330 F.R.D. 439, 445-446 (W.D. Tex. 2019)....................................................... 15, 17

*Schwartz v. TXU Corp.*,
　2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005 ................................................................ 10

*Stott v. Cap. Fin. Servs., Inc.*,
　277 F.R.D. 316, 343 (N.D. Tex. 2011) ................................................................................ 7

*Zeidman v. J. Ray McDermott & Co.*,
　651 F.2d 1030, 1039 (5th Cir. 1981) ................................................................................ 15

**Statutes**
15 U.S.C. § 78u-4(a)(7) ................................................................................................ 13
15 U.S.C. §78u-4(a)(4) .................................................................................................. 9

**Other Authorities**

*Recent Trends in Securities Class Action Litigation:*
　*2021 Full-Year Review* (NERA Jan. 25, 2022) .......................................................... 5

**Rules**

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................... 2
Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) .............................................................................. 9
Rule 23(e)(2)(C)(iv) ...................................................................................................... 10

## Motion

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff Andrew Bronstein ("Plaintiff") brings this unopposed motion for an order: (i) preliminarily approving the settlement with as embodied in the Revised Stipulation and Agreement of Settlement dated as of June 1, 2022 (the "Stipulation")[1], concurrently submitted herewith; (ii) conditionally certifying the proposed Class for settlement purposes; (iii) approval of the form and manner of providing notice to Settlement Class Members; (iv) approval of Strategic Claims Services ("SCS") as the Claims Administrator: and (v) setting a hearing date for the final approval thereof (the "Settlement Hearing").

This Motion is based upon the Stipulation and all exhibits attached thereto; the proposed preliminary approval order; and all other pleadings and matters of record.

## Memorandum of Law

## I.   INTRODUCTION

The Parties agreed to settle the Action for $3,250,000 (the "Settlement"), the terms of which are set forth in the Stipulation. The Settlement was reached only after Lead Counsel: (i) conducted a thorough investigation, including the retention of a private investigator and experts; (ii) drafted the comprehensive Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"); and (iii) drafted a detailed mediation statement and participated in settlement negotiations after reviewing the Defendants' mediation statements. The mediation, overseen by Jed Melnick, Esq. of JAMS, a highly respected mediator, was successful as the Parties agreed to resolve the Action. The Settlement is the result of arm's-length negotiations among well-informed, experienced securities practitioners. The Settlement meets the standards for preliminary approval and is in the Settlement Class's best interests. Thus, Plaintiff respectfully

---

[1] Unless otherwise defined, capitalized terms are defined in the Stipulation.

requests the Court preliminarily approve the Settlement.

## II.   OVERVIEW OF THE LITIGATION

This is a class action asserting claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. On November 23, 2021, after briefing on competing motions for appointment of lead plaintiff and approval of counsel, the Court appointed Bronstein as Lead Plaintiff, The Rosen Law Firm, P.A. as Lead Counsel, and Steckler Wayne Cochran Cherry as Liaison Counsel. On February 7, 2022, Plaintiff filed the Complaint. On February 10, 2022, the Parties jointly filed a motion requesting the continuance on the briefing deadlines for the anticipated motion to dismiss as the Parties were planning to engage in mediation. The Court granted this request on February 28, 2022, extending the deadlines for filing a motion to dismiss and response thereto.

On April 5, 2022, the Parties engaged in a mediation with Mr. Melnick, a mediator with substantial experience with complex class actions. Prior to the mediation, the Parties exchanged detailed mediation statements outlining their respective positions on liability and damages. The meditation was successful, culminating in the Parties agreement to settle.

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Public policy strongly favors settlements in complex class actions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (when considering a class action settlement "the court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties."). Under Rule 23(e), a class action can only be settled with court approval. To warrant preliminary approval, the parties must show "that the court will likely be able to...approve the proposal under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

"Rule 23(e)(2) was amended in 2018 to provide 'uniform guidance' to courts evaluating class settlements." *In re Chesapeake Energy Corp.*, 2021 WL 4776685, at *5 (S.D. Tex. Oct. 13, 2021). Before 2018, the Fifth Circuit required district courts considering whether a class settlement was fair, reasonable, and adequate to apply the factors set forth in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). *Id.* "The Advisory Committee notes to the 2018 amendments indicate that the changes to the rule are meant to 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal,' rather than 'displace any factor' sanctioned by the circuit courts." *Id.* "Because the Rule 23 and *Reed* factors overlap, 'courts in this circuit often combine them in analyzing class settlements.'" *Id.* (quoting *O'Donnell v. Harris Cty., Texas*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019)). The combined Rule 23 and *Reed* factors are: (1) whether the class representatives and counsel have adequately represented the class; (2) whether the proposed class settlement was negotiated at arm's length or was a product of fraud or collusion; (3) whether the relief is adequate considering the duration, costs, risks, and delay of trial and appeal; (4) the stage of the proceedings and the amount of discovery completed; (5) the probability of success on the merits; (6) the range and certainty of recovery; (7) the opinions of the participants, including class counsel, class representatives, and the absent class members; and (8) whether the proposal treats class members equitably in relation to each other. *Id.* at *13-19.

## IV.   THE SETTLEMENT MEETS THE RULE 23(e)(2) AND *REED* FACTORS

### A.   Plaintiff and Counsel Have Adequately Represented the Settlement Class

There can be no dispute that Plaintiff and his Counsel adequately represented the Settlement Class. Plaintiff's claims are coextensive with the claims of the Settlement Class, and he has no antagonistic interests. Furthermore, Plaintiff's interest in obtaining the largest possible recovery is aligned with the Settlement Class. *See In re Corrugated Container Antitrust Litig.*, 643

3

F.2d 195, 208 (5th Cir. 1981) (assignment exists when "class members are united in asserting a common right, such as achieving the maximum possible recovery for the class.").

Plaintiff retained counsel who are highly experienced in securities litigation. *See* Dkt. Nos. 15-5, 15-6 (firm resumes). Moreover, Lead Counsel vigorously prosecuted Plaintiff's claims prior to reaching the Settlement. *See supra*, § II. Accordingly, Plaintiff and Lead Counsel have adequately represented the Settlement Class. *See Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (representation adequate where proposed settlement was "negotiated by experienced, informed counsel . . .with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

## B.    The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion

The proposed Settlement is the product of a mediation process. That "the settlement was obtained through formal mediation…strongly suggests that the settlement was not the result of improper dealings." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018). Moreover, Mr. Melnick is a well-respected mediator who has assisted in numerous securities class action settlements. *See e.g., In re China Med., Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *5 (C.D. Cal. May 16, 2013) (that the parties reached a settlement as a result of mediation before Mr. Melnick weighs in favor of approval).

## C.    The Relief Provided for the Settlement Class is Adequate Considering the Duration, Costs, Risks, and Delay of Trial and Appeal

The Settlement is adequate because it provides significant, immediate relief and "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be appealed." *Hays*, 2019 WL 427331, at *10.

The $3,250,000 non-reversionary Settlement Amount is well within the range of reasonableness. Plaintiff's damages expert estimates that if Plaintiff had fully prevailed on his

4

claims at both summary judgment and after a trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiff's damages theory, the *total maximum damages* would be approximately $64.2 million. Thus, the Settlement Amount represents more than 5% of the total *maximum* damages *potentially* available in this Action. A recovery of 5% of *maximum* recoverable damages is well within the range of what is considered reasonable. *See* Ex. A (Excerpted Pages from Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24, Fig. 22 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages).

The duration, costs, risks, and delay of trial and appeal also strongly favor preliminary approval of the Settlement. There is no question that continued litigation would have been costly, risky, and protracted. "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Plaintiff and his counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiff's claims through a motion to dismiss, class certification, discovery, summary judgment, trial, and appeals. Continued litigation would be expensive, risky, and uncertain. While Plaintiff was confident, success is never guaranteed. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 413-414 (7th Cir. 2015) (reversing jury verdict of $2.46 billion after 13 years of litigation).

These uncertainties pose a significant risk that continued litigation would have yielded a smaller recovery – or no recovery at all – several years in the future. Instead, the Settlement provides an extremely favorable, immediately realizable recovery and eliminates all of the risk,

5

delay, and expense of continued litigation. *See Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case."); *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will "result in no recovery").

> ### D.     The Stage of the Proceedings and the Amount of Discovery Completed

Under this factor, the inquiry is whether the plaintiff has obtained a sufficient understanding of the strengths and weaknesses of the case and the adequacy of the settlement. *Cotton*, 559 F.2d at 1332. Although formal discovery was not conducted and "there is no voluminous record in the case," the Fifth Circuit has declared that "the lack of such does not compel the conclusion that insufficient discovery was conducted." *Id.; Corrugated Container,* 643 F.2d at 211 (courts "may legitimately presume that counsel's judgment 'that they had achieved the desired quantum of information necessary to achieve a settlement…is reliable.'").

Although no formal discovery was conducted due to the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay, Plaintiff and Lead Counsel engaged in an extensive investigation including: reviewing a wide variety of public sources, including Intrusion's SEC filings, news articles, and analyst reports as well as retaining a private investigator who interviewed former Intrusion employees. *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *8 (W.D. Tex. June 11, 2010) (given PSLRA discovery stay, the "parties were informed about the merits of their respective positions, and the settlement can be approved as reasonable even without formal discovery having been conducted").

> ### E.     The Probability of Plaintiff's Success on the Merits

This factor relates to trial and appeal risk. *Chesapeake Energy*, 2021 WL 4776685, at *15.

"[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172). However, "the trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330.

As in complex actions, Plaintiff faced formidable obstacles to recovery at trial. Although Plaintiff believes the Complaint's allegations would survived a motion to dismiss and would be supported by evidence, he also recognizes that he faced significant hurdles at trial. Defendants would likely argue that Plaintiff could not demonstrate falsity and scienter. Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *In re Arthrocare Corp. Sec. Litig.*, No. A-08-CA-574-SS, 2012 WL 12951371, at *5 (W.D. Tex. June 4, 2012) (noting "the significant difficulty of proving scienter and loss causation in the Fifth Circuit."); *In re OCA, Inc. Sec. & Derivative Litig.*, No. CIV.A.05-2165, 2009 WL 512081, at *13 (E.D. La. Mar. 2, 2009) (without settlement plaintiff "would have had the difficult task of proving complex issues to a jury" including scienter).

While Plaintiff believes that he has meritorious counter-arguments, success was not a foregone conclusion since "the issues would be hotly disputed by the parties. Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005). Additionally, "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief." *Id.* at *19. And, of course, there was no guarantee they would prevail. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441,

1446, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing securities action with prejudice). Accordingly, this weighs in favor of preliminary approval.

### F.    The Range of Possible Recovery

Based on Plaintiff's calculations, maximum recoverable damages are approximately $64.2 million. Such a recovery was, however, predicated on Plaintiff *proving* loss causation and damages through expert testimony. This is an inherently difficult task. Defendants would have presented their own experts who would have asserted that there was no causal connection between Intrusion's alleged misstatements and drops in the Company's stock price, and, even if there were such a connection, that the damages suffered by the Settlement Class were a mere fraction of the amount Plaintiff sought. This would have required a jury to decide the "battle of the experts" – "with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001). Additionally, the Company's D&O insurance, the source of funds available to the Settlement Class, is also needed to respond to covered claims in relation to the Company's response to the SEC's investigation and any other covered claims. Accordingly, if litigation were to proceed, fewer funds would be available to investors. Thus, the substantial and guaranteed payment of $3,250,000 plainly weighs heavily in favor of approving the Settlement.

### G.    The Opinions of the Participants

"Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel." *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted,* No. 6:13CV736, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. Lead Counsel have considerable experience in securities class actions and believe the Settlement merits approval.

8

Plaintiff also supports the Settlement. This supports preliminary approval.

### H.    All Settlement Class Members Are Treated Equitably

Under the proposed Plan of Allocation (the "Plan") in the Long Notice, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Because the proposed Plan does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Plaintiff, this factor supports preliminary approval of the Settlement. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at \*15 (W.D. La. Mar. 3, 2015) (approving plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses).[2]

### I.    Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS") – the Claims Administrator selected by Lead Counsel subject to Court approval – will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement

---

[2] Pursuant to the PSLRA, Plaintiff may separately seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class. 15 U.S.C. §78u-4(a)(4).

Fund (per the Plan), after Court-approval.[3] The manner of processing Claims proposed here is standard in securities class action settlements and has long been found to be effective, as well as necessary, since neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free distribution process.[4] *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

Second, as the Notice discloses, Lead Counsel will apply for a percentage of the common fund as a fee award in an amount not to exceed one-third (including interest earned on the Settlement Amount) to compensate them for the services they have rendered on behalf of the Settlement Class. Attorneys' fees of this amount are reasonable in light of the work performed and the results obtained and is also consistent with awards in similar complex class action cases. *See, e.g.*, *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) ("The fee represents one-third of the . . . settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 ("The 33⅓% requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases."); *Frost v. Oil States Energy Servs.*, 2015 WL 12780763, at *2 (S.D. Tex. Nov. 19, 2015) ("The Court approves Class Counsel's request for 33⅓% of the Settlement Fund as reasonable attorneys' fees"). Approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based upon any ruling with respect to attorneys' fees. *See* Stipulation ¶8.3.

Third, as to Rule 23(e)(2)(C)(iv), the Parties entered into a confidential agreement that

---

[3] SCS has substantial experience serving as the claims administrator in securities class actions.
[4] This is not a claims-made settlement. If the Settlement is approved, Defendants or the Insurers will not have any right to the return of a portion of the Settlement. *See* Stipulation ¶7.4.

10

establishes conditions under which Intrusion may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of Intrusion common stock, request exclusion from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *Halliburton*, 2018 WL 1942227, at \*5 (approving settlement with similar confidential agreement).

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court should certify this case as a class action for purposes of the Settlement because it meets the certification requirements under Rule 23(a) and (b)(3).

First, the Rule 23(a)(1) numerosity requirement is satisfied here. There are likely hundreds, if not thousands, Settlement Class Members as Intrusion stock is traded publicly on NASDAQ and millions of shares were traded during the Settlement Class Period. Thus, the Class is likely so large that joinder of all class members is impracticable. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) ("The [numerosity] prerequisite . . . is generally assumed to have been met in class action suits involving nationally traded securities.").

Second, the Rule 23(a)(2) commonality requirement is satisfied because the proposed class representatives share at least one question of fact or law with the claims of the prospective class, including, without limitation whether: (i) Defendants made misrepresentations and omissions; (ii) those alleged misrepresentations and omissions were material and made with scienter; and (iii) the Settlement Class Members have sustained damages and the proper measure of such damages. *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445-446 (W.D. Tex. 2019) ("Plaintiff alleges Defendants made uniform representations and omissions to the class," which "implicate multiple questions common to the class").

Third, Rule 23(a)(3) typicality requirement is satisfied because Plaintiff's claims and those of the Settlement Class arise from Defendants' same alleged conduct. *Id.* at 446 (noting that "[a]ll

11

putative class members, including Plaintiff, allegedly purchased EZCORP stock during the class period at prices inflated by Defendants' misstatements and omissions").

Fourth, Rule 23(a)(4) adequacy is satisfied because there are "no conflicts between Plaintiff and the members of the proposed class," and Plaintiff has "demonstrated he is both willing and able to vigorously prosecute the interests of the class through qualified counsel" during the more than two years that they prosecuted this case until settlement. *Id*. at 446-47.

Additionally, the Settlement Class meets the Rule 23(b)(3) predominance and superiority requirements, which are satisfied when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, common questions predominate over individual issues because if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (predominance is "readily met" in securities fraud cases); *LHC Group*, 2015 WL 965693, at *13 (stating that "the issues of falsity [and] materiality . . . are common to all Class members").

Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). "[I]ndividual class members have little interest in controlling the prosecution because the cost of bringing individual suits to seek recovery would in most cases outweigh the recovery obtained"; "this forum is as desirable a forum as any given the geographic dispersal of investors and [Intrusion's] headquarters in [Plano], Texas"; and given that the Parties have already reached a settlement, "this putative class action presents no likely management difficulties." *EZCORP*, 330 F.R.D. at 451-52.

Accordingly, class certification for the purposes of settlement is appropriate.

12

## V.     THE FORM AND METHOD OF THE NOTICE SHOULD BE APPROVED

Class notice of a settlement must meet the requirements of Rules 23, the PSLRA, and due process. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). The question is whether the notice is "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Id.* at 173.

The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged and how to request exclusion from the Settlement (and clearly states that all those who do not exclude themselves will be bound by the Settlement); (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel and Plaintiff; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Long Notice to those Persons for whom the nominees held shares in a "street name." Furthermore, the PSLRA-mandated disclosures are satisfied as the Long Notice: (a) states the amount of the Settlement on both an aggregate and average per share basis; (b) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (c) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (d) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7). Thus, the Notice, as required, contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re*

*Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Courts routinely find that comparable notice programs meet the requirements of due process, Rule 23 and the PSLRA. *See, e.g. In re Enron Corp.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003). Additionally, pursuant to Fed. R. Civ. P. 23(h)(1), the Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, reimbursement of expenses of up to $50,000, and an award to Plaintiffs of up to $5,000, all to be paid from the Settlement Fund.

The proposed method of disseminating the Notice includes: (a) emailing links to the webpage hosting the Long Notice and Proof of Claim to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses; (b) mailing the Postcard Notice, if no email address can be obtained, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Lead Counsel; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) publishing the Summary Notice over *GlobeNewswire*. Courts routinely find these methods of notice sufficient. *See e.g., In re Forterra Inc. Sec. Litig.*, No. 3:18-CV-01957-X, 2020 WL 4727071, at *2 (N.D. Tex. Aug. 12, 2020) (postcard notice, online posting of the notice, and publication of summary notice satisfied requirements of Fed. R. Civ. P. 23, due process, and the PSLRA); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.") (citing cases). Thus, the Court should approve the form and content of the Notice.

## VI.    PROPOSED SETTLEMENT SCHEDULE

Plaintiff proposes the following schedule of events leading to the Settlement Hearing:

14

| | |
|---|---|
| Deadline for emailing the Summary Notice and mailing the Postcard Notice, electronic publication of the Summary Notice, and posting of documents to the Claims Administrator's website ("Notice Date") | 35 days after entry of the Preliminary Approval Order (¶11, 16, 17) |
| Deadline for filing and service of proof of mailing of Postcard Notice and proof of publication of the Summary Notice. | 10 days after the Notice Date (¶15, 17) |
| Deadline for Plaintiff to file motions for final approval and application for fees and expenses | 28 days before the Settlement Hearing (¶28) |
| Deadline for requesting exclusions and submitting objections | 21 days before the Settlement Hearing (¶¶21, 25) |
| Submission deadline for Claim Forms | 30 days before Settlement Hearing (¶19(a)) |
| Deadline for filing reply papers | 7 days before the Settlement Hearing (¶29) |
| Settlement Fairness Hearing | At least 100 days after entry of the Preliminary Approval Order |

## VII.    CONCLUSION

Plaintiff respectfully requests the Court grant preliminary approval of the Settlement.

Dated: August 10, 2022,                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Brent J. LaPointe*
Brent J. LaPointe (*pro hac vice*)
Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: blapointe@rosenlegal.com
          Email: pkim@rosenlegal.com

*Lead Counsel for the Plaintiff and the Class*

15

**COCHRAN LAW PLLC**

By: */s/ Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No. 24027936
8140 Walnut Hill Lane, St. 250
Dallas, Texas 75231
Tel: (469) 333-3405
Email: stuart@scochranlaw.com

*Liaison Counsel for Plaintiff and the Class*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel has complied with the meet and confer requirement in Local

Rule CV-7(i), and this Motion in Unopposed.

*/s/ Brent J. LaPointe*
Brent LaPointe

**CERTIFICATE OF SERVICE**

I certify that on August 10, 2022, a copy of this document was served on all counsel of

record by operation of the Court's electronic filing system.

*/s/ Stuart L. Cochran*
Stuart L. Cochran

16