**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| JAMES CELESTE, Individually and on Behalf of All Others Similarly Situated, | § CIVIL ACTION NO. 4:21-cv-00307-SDJ<br>§ [**LEAD CASE**]<br>§ |
| Plaintiff, | § |
| | § CLASS ACTION |
| v. | §<br>§ |
| INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO, | §<br>§<br>§<br>§<br>§<br>§ |
| Defendants. | |
| GEORGE NEELY and JOAN NEELY, Individually and on Behalf of All Others Similarly Situated, | § CIVIL ACTION NO. 4:21-cv-00374-SDJ<br>§ [**CONSOLIDATED**]<br>§ |
| | § CLASS ACTION |
| Plaintiff, | § |
| | § |
| v. | §<br>§ |
| INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO, | §<br>§<br>§<br>§<br>§<br>§ |
| Defendants. | § |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY........................................ 2

III.  STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ..... 2

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................ 4

    A.  Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class... 4

    B.  The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion.................................... 5

    C.  The Relief Provided to the Settlement Class Is Adequate Considering the Duration, Costs, Risks, and Delay of Trial and Appeal.......................................... 6

    D.  The Stage of Proceedings and the Amount of Discovery Completed ................... 8

    E.  The Probability of Plaintiff's Success on the Merits ............................................. 9

    F.  The Range and Certainty of Recovery ................................................................. 12

    G.  The Opinions of the Participants.......................................................................... 13

    H.  All Settlement Class Members Are Treated Equitably ........................................ 14

    I.  Other Factors Established by Rule 23(e)(2)(C) Support Final Approval of the Proposed Settlement............................................................................................. 15

V.  THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED............................ 16

VI.  THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ................... 16

VII.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................... 17

VIII.  CONCLUSION........................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ................................................... 6

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ................................................... 8

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
  2015 WL 965693 (W.D. La. Mar. 3, 2015) ................................ 6, 14, 19

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
  No. CIV. 6:12-1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015) ........... 13

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................. 12

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ................................................ 3, 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........................ 5, 12, 14, 16

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................................. 10

*Garza v. Sporting Goods Properties, Inc.*,
  No. CIV. A. SA-93-CA-108,1996 *WL 56247 (W.D. Tex. Feb. 6, 1996)* ........... 10

*Gordon v. Vanda Pharms. Inc.*,
  No. 19 CV 1108 (FB)(LB), 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ........... 5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S 263 (2014) ........................................................... 11

*Hays v. Eaton Grp. Attorneys, LLC*,
  2019 WL 427331 (M.D. La. Feb. 4, 2019) .................................... 4, 6

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F.Supp. 1396 (E.D.N.Y. 1985) ........................................... 8

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................... 19

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................. 11

*In re Chesapeake Energy Corp.*,
2021 WL 4776685 (S.D. Tex. Oct. 13, 2021) ................................. 3, 4, 9

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ................................................................ 17

*In re China Med. Corp. Sec. Litig.*,
No. 8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................... 5

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) .................................................................. 9

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................ 18

*In re Dell Inc.*,
No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. Jun. 11, 2010) ..................... 9

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
447 F. Supp. 2d 612 (E.D. La. 2006) ...................................................... 6

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................. 9

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................... 10

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................... 18

*In re Lease Oil Antitrust Litig. (No. II)*,
186 F.R.D. 403 (S.D. Tex. 1999) ............................................................ 8

*In re Mut. Funds Inv. Litig.*,
MDL No. 1586, 2010 WL 2342413 (D. Md. May 19, 2010) ...................... 17

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. CIV.A.05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ................ 11, 12

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................. 4

*In re Prohibition Against Disclosing ENE Commc'ns to Settlement Judges*,
   494 F. Supp. 2d 1097 (N.D. Cal. 2007) ................................................................. 10

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993) ........................................................................... 6

*Jenkins v. Trustmark Nat. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ....................................................................... 8

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................................... 12

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................................. 3

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) .................................................................... 9

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................... 13

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 233-34 (E.D. Mich. 2016) ............................................................... 15

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ............................................................................. 2

*ODonnell v. Harris Cty., Texas*,
   2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) .................................................... 3

*Oppenlander v. Standard Oil Co. (Indiana)*,
   64 F.R.D. 597 (D. Colo. 1974) ........................................................................... 6

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ..................................................................... 3, 13

*Quintanilla v. A & R Demolition Inc.*,
   2008 WL 9410399 (S.D. Tex. May 7, 2007) ...................................................... 12

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) .......................................................... 3, 10, 12, 13

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992) ................................................................. 8

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................... 12

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................................... 11, 12

*Stott v. Cap. Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ............................................................ 8

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) .................................................... 14

*U.S. v. Tex. Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) ................................................................ 2

## <u>Statutes</u>

15 U.S.C. § 78u-4(a)(4) ...................................................................... 15

## <u>Rules</u>

Fed. R. Civ. P. 23 ..................................................................... passim

Pursuant to Fed. R. Civ. P. 23(e), the Court's August 17, 2022 Order granting preliminary approval of the Settlement and providing for notice ("Preliminary Approval Order") (ECF No. 56), Lead Plaintiff Andrew Bronstein ("Plaintiff"), on behalf of himself and the Settlement Class, respectfully submits this Unopposed Motion and Memorandum of Law in support of final approval of the proposed Settlement and Plan of Allocation. [1]

## I.    INTRODUCTION

Plaintiff obtained a $3,250,000 all cash, non-reversionary settlement for the benefit of the Settlement Class. As described below and in the Kim Declaration, the Settlement is a highly favorable result, providing a significant and certain recovery in a case that presented numerous hurdles. Moreover, the Settling Parties reached the Settlement only after a full-day of arm's-length negotiations conducted by experienced counsel with a highly respected mediator, Jed Melnick, Esq. of JAMS. The Settlement is, therefore, both substantively and procedurally fair.

In order to effect the settlement, experienced counsel formulated the Settlement's Plan of Allocation with assistance from a damages expert. The Plan of Allocation equitably divides the Settlement between Settlement Class Members based on how many shares they bought, at what price, and when, and complies with loss causation principles.

Further, as the Court ordered,[2] copies of the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") were emailed and copies of the Postcard Notice were

---

[1] Unless otherwise noted, all capitalized terms not defined herein shall have the same meaning as set forth in the Revised Stipulation and Agreement of Settlement, dated as of June 1, 2022, and filed with the Court on August 10, 2022, ECF No. 55 (the "Stipulation"), or the concurrently-filed Declaration of Phillip Kim in Support of Lead Plaintiff's Motions for: (1) Final Approval of Proposed Class Action Settlement, Plan of Allocation, and Class Certification; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Kim Decl."). All citations herein to "¶__" and "Ex.__" refer to the Kim Declaration.

[2] *See generally* Preliminary Approval Order, dated August 17, 2022, ECF No. 56.

mailed to potential Class Members, brokers, and nominee holders. The deadline for claims elapsed on October 31, 2022. While the deadline for objections and requests for exclusion extends to November 9, 2022, there have been no objections and no valid[3] requests for exclusion to date.

Accordingly, the Court should finally approve the Settlement and the Plan of Allocation, appoint Plaintiff as Class representative and Lead Counsel as Class Counsel, and finally certify the proposed Settlement Class for purposes of the Settlement.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Kim Declaration is an integral part of this submission and the Court is respectfully referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶9-14); the nature of the claims asserted (¶¶15-18); the efforts involved in the drafting and defending of the Complaint (¶33); the risks of continued litigation (¶¶7-8); the negotiations leading to the Settlement (¶¶20-24); and the Plan of Allocation (¶¶25-29).

## III.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

In determining the propriety of granting final approval of a class action settlement, courts determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).[4] When a settlement, such as this one, is reached as the result of arm's-length negotiations between competent counsel on both sides, it "is entitled to a presumption of validity, which ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *U.S. v.*

---

[3] The Claims Administrator received one putative request for exclusion on October 31, 2022. The request consisted of a one-sentence, handwritten note, delivered by facsimile from a UPS Store, and included no documentation of the sender's holdings or mailing address. The Claims Administrator has sent letters to two potential mailing addresses identified through public record search. Kim Decl., ¶23. We will update the Court in advance of the fairness hearing of any subsequent developments.

[4] Unless otherwise noted, all internal citations and quotations are omitted, and emphasis is added.

*Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

Evaluating the propriety of a complex class action settlement is within the sound discretion of the district court, which should exercise it while giving appropriate consideration to the strong public policy interests favoring the settlement. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) ("[A]n approved settlement will not be upset unless the court clearly abused its discretion."); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."). Thus, "the court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

"Rule 23(e)(2) was amended in 2018 to provide 'uniform guidance' to courts evaluating class settlements." *In re Chesapeake Energy Corp.*, 2021 WL 4776685, at *5 (S.D. Tex. Oct. 13, 2021). Before 2018, the Fifth Circuit required district courts considering whether a class settlement was fair, reasonable, and adequate under Rule 23(e)(2) to apply the factors set forth in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). *Id.* "The Advisory Committee notes to the 2018 amendments indicate that the changes to the rule are meant to 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal,' rather than 'displace any factor' sanctioned by the circuit courts." *Id.* "Because the Rule 23 and Reed factors overlap, 'courts in this circuit often combine them in analyzing class settlements.'" *Id.* (quoting *ODonnell v. Harris Cty., Texas*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019)). The combined Rule 23 and *Reed* factors are: (1) whether the class representatives and counsel have adequately represented the class; (2) whether the proposed class settlement was negotiated at arm's length or was a product of fraud or collusion; (3) whether the relief is adequate considering the duration, costs, risks, and delay of trial and appeal; (4) the stage of the proceedings

and the amount of discovery completed; (5) the probability of success on the merits; (6) the range and certainty of recovery; (7) the opinions of the participants, including class counsel, class representatives, and the absent class members; and (8) whether the proposal treats class members equitably in relation to each other. *Id.* at \*13-\*19.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Plaintiff adequately represented the Settlement Class by actively pursuing his claims against Defendants, including regularly communicating with Lead Counsel on case developments and conferring with Lead Counsel throughout the settlement negotiations. *See* Exhibit 3 to the Kim Declaration (Declaration of Lead Plaintiff Andrew Bronstein). Moreover, Plaintiff — an investor who purchased Intrusion securities during the Settlement Class Period and suffered damages as a result — suffered the same injury as other Settlement Class Members, thereby aligning Plaintiff's interest in obtaining the largest possible recovery in the Action with the Settlement Class. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest….").

Plaintiff's Counsel, including Lead and Liaison Counsel, have also adequately represented the Settlement Class throughout the litigation. *See* Exhibits 1-2 to the Kim Declaration (attaching law firm resumes). As set forth above (*supra* § I), Lead Counsel vigorously prosecuted the Action against skilled opposing counsel and achieved a favorable result. The Settling  Parties achieved the Settlement only after Lead Counsel: (1) thoroughly investigated the Settlement Class's claims and retained a private investigator; (2) consulted with a market efficiency, loss causation and damages expert; (3) drafted the Amended Complaint; (4) prepared a detailed mediation statement and supporting materials; and (5) engaged in vigorous arm's-length settlement discussions before, during, and after the in-person mediation session. ¶33. *See Hays v. Eaton Grp. Attorneys, LLC* ,

4

2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (representation was adequate where settlement was "negotiated by experienced, informed counsel . . .with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

**B.     The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel and There is No Fraud or Collusion**

The Settlement was reached only after extensive arm's-length negotiations between experienced counsel who thoroughly evaluated the merits of the claims and were well aware of the strengths and weaknesses of the case. ¶33 (detailing the investigation and work performed by Lead Counsel). The mediation process—which included a full-day mediation session that ultimately resulted in the proposed settlement—was led by Mr. Melnick, a well-respected mediator who has significant experience mediating securities class actions and other complex litigation. That "the settlement was obtained through formal mediation…strongly suggests that the settlement was not the result of improper dealings." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018). Here, Mr. Melnick, who oversaw the settlement negotiations, has substantial experience mediating complex securities action. *See, e.g., Gordon v. Vanda Pharms. Inc.*, No. 19 CV 1108 (FB)(LB), 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (holding that settlement negotiations were arms'-length with Mr. Melnick's involvement and mediator's proposal); *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

For their part, Defendants have denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the claims alleged in the Amended Complaint. Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, and that it is desirable that this litigation be fully and finally settled in the manner and upon the

terms and conditions set forth in the Revised Stipulation and Agreement of Settlement. As Plaintiff did, Defendants have taken into account the risks inherent in any litigation, especially in complex cases such as this one.

As set forth below, the proposed Settlement is not only a highly favorable result from the perspective of Plaintiff, Defendants, and their respective counsel, but it meets all of the objective requirements for an approvable settlement established by the Fifth Circuit and its district courts.

### C.     The Relief Provided to the Settlement Class is Adequate Considering the Duration, Costs, Risks, and Delay of Trial and Appeal

This factor is satisfied where the relief afforded the Settlement Class falls within the range of reasonableness and where "[a] trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] [a]ny judgment would likely be appealed." *Hays*, 2019 WL 427331, at \*10. "It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. Furthermore, courts have repeatedly recognized that securities litigation "is a highly technical and specialized area of the law" and that claims brought pursuant to the federal securities laws are "extremely complex." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at \*7 (W.D. La. Mar. 3, 2015). Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Courts value a certain and immediate recovery for plaintiffs, as opposed to the mere prospect of a big payday in the future: "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp.

2d 612, 620 (E.D. La. 2006) ("an early settlement that obviated these delays and the risks of having to litigate the claims makes sense"). This maxim holds especially true for securities class actions governed by the unique pleading and proof requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA")..

Due to the high-stakes nature of this type of litigation, Defendants are represented by prestigious law firms—Wilson Sonsini Goodrich & Rosati and Greenberg Traurig LLP—whose attorneys have considerable experience with securities litigation. Responding to and prevailing over such a vigorous defense would necessarily increase the costs of litigation for Plaintiff and the Class.

While Plaintiff believes he can prevail in this action, he faces material challenges including resolution of the motion to dismiss stage, class certification, summary judgment, and trial. Should Plaintiff's claims survive Defendants' summary judgment motions, it would take several weeks to try the claims. The trial would be complex and expensive, as both sides would likely have numerous experts opining on damages and class issues—and this does not include the extensive *Daubert* motion practice that would likely precede such testimony.

Not only would litigating this case through trial require an extraordinary commitment of time, money, and resources by Lead Counsel, the likelihood of an appeal should Plaintiff prevail would force Settlement Class Members to wait even longer to see a recovery (if any). This lengthy delay reduces the present value of a hypothetical victory when compared to the certainty of an immediate settlement—one which eliminates the risk of ultimately recovering nothing. *See Strougo v. Bassini*, F.Supp. 2d 254, 260-61 (S.D.N.Y. 2003) ("Even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes

in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396, 1405 (E.D.N.Y. 1985) ("much of the value of a settlement lies in the ability to make funds available promptly") (modified on other grounds).

Considering the costs, risks, complexity and delay at stake, Plaintiff and his counsel recognized the very real risk that continuing to prosecute their claims could have resulted in a smaller—or even non-existent—recovery for the Settlement Class years into the future. ¶¶7-8. In contrast, the Settlement provides a substantial and immediate recovery for the Settlement Class, without subjecting it to the significant risks, expenses and delay of continued litigation. ¶¶22-24. Accordingly, this factor supports final approval of the Settlement. *See Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case").

### D.    The Stage of Proceedings and the Amount of Discovery Completed

This factor inquires as to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). Courts are mindful of the interplay between this factor and other important considerations: "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Indeed, "'[a] settlement may be approved even where plaintiffs have not conducted formal discovery where plaintiffs… have access to the desired quantum of information necessary to achieve a settlement.'" *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014) (quoting *In re Lease Oil*

8

*Antitrust Litig. (No. II)*, 186 F.R.D. 403, 432 (S.D. Tex. 1999) and *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

Because of the high bar set by the PSLRA for pleading the elements of falsity and scienter in a securities fraud action, Lead Counsel, prior to filing the Amended Complaint, conducted an extensive independent investigation of a wide variety of public sources, including Intrusion's U.S. SEC filings and numerous news articles and analyst reports concerning Intrusion's business and financial condition. ¶33. Lead Counsel also retained a private investigator, who conducted interviews with former Intrusion employees. *Id.* Such an investigation sufficed to give Plaintiff enough information to settle. *See,* e.g.*, In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *8 (W.D. Tex. Jun. 11, 2010).

Furthermore, preparation for and participation in the April 5, 2022, mediation allowed the Settling Parties to assess the strength of the case, the facts alleged, and the remaining stages of this action. *See e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) ("the key issue is whether the parties and the district court possess ample information with which to evaluate the merits of the competing positions…. The sufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available… even when little or no formal discovery has been completed."). Consequently, Plaintiff and Lead Counsel have already expended significant time, effort, and money evaluating the merits of the claims alleged. Thus, by the time the Settlement was reached, the Settling Parties and their counsel had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

### E.    The Probability of Plaintiff's Success on the Merits

This factor relates to trial and appeal risk. *Chesapeake Energy*, 2021 WL 4776685, at *15. As in every complex case of this kind, Plaintiff and the Settlement Class faced formidable obstacles

to recovery at trial, both with respect to liability and damages. Despite Plaintiff's and Lead Counsel's confidence in the strength of their case, for the many reasons stated above, proof of liability and damages could prove quite difficult. As a result, it would be "imprudent to presume ultimate success at trial and thereafter." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) (collecting cases where courts rejected proposed settlement and the ultimate recovery to plaintiffs turned out to be lower than that in the proposed settlement). Therefore, in evaluating the likelihood of success, a court "must compare [the terms of the settlement] with the likely rewards the class would have received following a successful trial of the case." *Reed, supra,* 703 F.2d at 172; *see also In re Prohibition Against Disclosing ENE Commc'ns to Settlement Judges*, 494 F. Supp. 2d 1097, 1105 (N.D. Cal. 2007) ("Most judges… understand that the task of analyzing a case and trying to predict the outcome of litigation is fraught with analytical and informational perils").

Here, Plaintiff faces substantial risks in going forward with litigating this case. *See Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) (factors such as financial burden on counsel and time demands of litigating class actions of this size and complexity have caused cases to be considered "undesirable"). Defendants have and certainly will continue to argue that Plaintiff cannot establish that the alleged misstatements about Intrusion's business were false at the time they were made, as Defendants will claim that everything they disclosed to the public was accurate. Moreover, Defendants will vigorously argue that the evidence fails to demonstrate that Defendants knew about any misstatements and that any allegedly incomplete disclosures were not materially misleading. The scienter element of securities fraud, which Defendants will continue to contest, is considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 WL

10

305358, at *2 (S.D.N.Y. Jan. 25, 2010). While Plaintiff is confident the Class has meritorious arguments, success is not a foregone conclusion. "If litigation were to proceed, the issues would be hotly disputed by the parties. Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming, and require expert testimony." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005).

Even if Plaintiff is successful in establishing liability at trial, he would still face substantial risks in establishing damages on a class-wide basis. For example, Defendants would certainly have disputed damages by claiming that there was no causal connection between Intrusion's allegedly misleading disclosures and drops in the Company's stock price, and even if there were such a connection, they would argue that the damages suffered by the class were a mere fraction of the amount Plaintiff seeks. ¶23. This dispute would have required a jury to decide the "battle of the experts"—an intrinsically expensive and unpredictable process. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re OCA, Inc. Sec. & Derivative Litig.*, No. CIV.A.05-2165, 2009 WL 512081, at *14 (E.D. La. Mar. 2, 2009) ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable.").

Additionally, while Plaintiff was confident that he would successfully obtain class certification, such success was not guaranteed. Class certification requires substantial briefing, extensive and costly expert discovery, including depositions, on the issue of market efficiency. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S 263, 280 (2014) (holding that defendants may rebut the presumption of reliance at the class certification stage by showing that the alleged misrepresentations did not impact the stock price). Thus, the class certification process would have

involved substantial risk to the Settlement Class and considerable expense to both parties. Moreover, "the law of class actions is developing at a rapid clip, and it is always possible that some new Supreme Court decision would counsel in favor of decertification." *City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014).

Finally, even "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief." *Schwartz*, 2005 WL 3148350, at *19; *see also OCA*, 2009 WL 512081, at *11 ("After trial, the parties could still expect years of appeals."). And, of course, there was no guarantee they would prevail. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing securities action with prejudice).

Accordingly, "[t]aking into account the risks inherent in this litigation, as well as the costs of litigation, the settlement amount is fair and reasonable." *Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2007).

### F.    The Range and Certainty of Recovery

The Court is also required to determine whether the terms of the Settlement "fall within *a reasonable range of recovery*, given the likelihood of the Plaintiff's success on the merits." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010). In making this assessment, "courts will compare the settlement amount to the relief the class could expect to recover at trial, *i.e.*, the strength of the plaintiff's case." *Halliburton*, 2018 WL 1942227, at *5. The Court should not, however, "try the case via the fairness hearing because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* at *5 (quoting *Reed*, 703 F.2d at 172); Accordingly, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

12

disapproved." *Parker*, 667 F.2d at 1210 n.6. Indeed, "final approval is frequently given to settlements even when the settlement amount is a very small fraction of the damages amount projected by the Plaintiffs." *Halliburton*, 2018 WL 1942227, at *5.

The $3,250,000 non-reversionary, all cash settlement is well within the range of reasonableness. Plaintiff's damages expert estimates that if Plaintiff had fully prevailed on his claims, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiff's damages theory, the ***maximum damages*** would be approximately $42.7 million. Thus, the Settlement represents more than 7.61% of the ***maximum*** damages ***potentially*** available in this Action. A recovery of 7.61% of ***maximum*** recoverable damages is well within the range of what is considered reasonable. Even without the additional hurdles, the Settlement compares favorably to settlements in similar cases. *See, e.g., City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *7 (W.D. La. Mar. 3, 2015) ("The typical recovery in most class actions generally is three-to-six cents on the dollar."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *See also* **Exhibit A** hereto, Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24, Fig. 22 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages). This is especially true when the recovery is balanced against the risks of continued litigation. *See* § IV.E, *infra*.

### G.    The Opinions of the Participants

Courts also consider "the opinions of the class counsel, class representatives, and absent class members" concerning the settlement. *Reed*, 703 F.2d at 172. "Counsel are the Court's main source of information about the settlement . . . and therefore…give weight to class counsel's

opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007). Here, Lead Counsel possesses substantial experience litigating securities class actions, have a thorough understanding of the strengths and weaknesses of this case, and believe the Settlement merits approval. *See* Rosen Law Firm Resume, attached as Exhibit C to the Declaration of Phillip Kim in Support of Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses ("Kim Fee Decl.") (itself attached at Ex. 1 to the Kim Declaration). In addition, Plaintiff, who has been actively involved in the litigation, supports the Settlement. *See* Ex. 3 to the Kim Declaration (Declaration of Lead Plaintiff Andrew Bronstein). Finally, the Court should consider the reaction of the Settlement Class. While the deadline to file objections and requests for exclusion is November 9, 2022—seven days from this filing—to date, no objections and no valid requests have been received. Bravata Decl. ¶¶12-13. This reaction weighs in favor of final approval. *See Halliburton*, 2018 WL 1942227, at *5 ("Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement").[5]

## H.    All Settlement Class Members Are Treated Equitably

The Settlement "treats class members equitably relative to each other" as required by Rule 23(e)(2)(D). Under the proposed Plan of Allocation,[6] each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Plaintiff, this factor supports final approval. *See City of Omaha*, 2015 WL 965693, at *15 (approving plan of allocation where each class member would receive their *pro rata* share of

---

[5] If any objections or requests for exclusions are received after the date of this submission, Lead Counsel will address them in the reply brief, which will be filed no later than November 23, 2022.

[6] The proposed Plan of Allocation is set forth in the Notice. Ex. A to the Bravata Decl. (pp. 5-8) (Ex. ___ to the Kim Decl.).

the funds based on calculation of recognized losses).[7]

I.    **Other Factors Established by Rule 23(e)(2)(C) Support Final Approval of the Proposed Settlement**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).

First, the Net Settlement Fund will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation. *See* § VII, *infra*. Strategic Claims Services ("SCS")—the Claims Administrator selected by Lead Counsel and approved by the Court—will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and distribute Authorized Claimants their *pro rata* share of the Net Settlement Fund, after Court-approval. The manner of processing Claims proposed here is standard in securities class action settlements and courts have found this process effective, as well as necessary, since neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process.[8] *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with similar distribution process).

Second, as discussed in detail in the accompanying Fee Motion, the relief provided for the

---

[7] Pursuant to the PSLRA, Plaintiff may separately seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class. *See* 15 U.S.C. § 78u-4(a)(4).

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶7.4.

Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. The proposed attorneys' fees of 33⅓%, to be paid upon approval by the Court, are reasonable in light of the substantial work and efforts of Plaintiff's Counsel, the risks counsel faced in the litigation, the results achieved, and awards in similar complex cases. Most importantly, the Court's consideration of the proposed award of attorneys' fees is entirely separate from approval of the Settlement, and neither Plaintiff nor Lead Counsel may terminate the Settlement based on the ultimate award of attorneys' fees or expenses. Stipulation at ¶8.3.

Third, with respect to Rule 23(e)(2)(C)(iv), the Settling Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members submit valid and timely requests for exclusion. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See Halliburton*, 2018 WL 1942227, at *5 (approving settlement with similar confidential agreement).

## V.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 56, ¶¶1-4. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiff's Revised Motion and Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (*see* ECF No. 54, at pp. 11-12), Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VI.    THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The Court approved the proposed notice program in the Preliminary Approval Order, and

Plaintiff has executed it. Notice was given to Settlement Class Members either via the Postcard Notice or emailed Summary Notice, the settlement website, and publication of the Summary notice. Bravata Decl., ¶2-11. Copies of the Postcard Notice were timely mailed by SCS, to an aggregate of 16,520 potential Settlement Class Members and the largest brokerage firms, banks, institutions, and other nominees. Bravata Decl., ¶6. SCS was notified by a nominee that an additional 10,357 potential Settlement Class Members were notified and provided a direct link to the Summary Notice on the settlement webpage.  Bravata Decl., ¶7. In total, 26,877 potential members of the Settlement Class have been provided notice of the Settlement. Bravata Decl., ¶8.

On September 19, 2022, the Court-approved Summary Notice was published in *Investors' Business Daily* and over the *Globe Newswire*. Bravata Decl. ¶9. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See* Bravata Decl. at Ex. D. Finally, SCS posted the Notice, Claim Form, and other relevant documents online at the Settlement Website, www.strategicclaims.net/Intrusion/, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement. Bravata Decl. ¶¶9-11. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *In re Mut. Funds Inv. Litig.*, MDL No. 1586, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical").

## VII.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In the Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation and Plaintiff now requests final approval. Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to approval of the settlement as a whole— the plan must be "fair, adequate and reasonable." *In re Chicken Antitrust Litig. Am. Poultry*, 669

F.2d 228, 238 (5th Cir. 1982). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).

Here, the proposed Plan of Allocation is set forth in the Long Notice posted on the Settlement website. Bravata Dec. at Ex. A (Notice at pp. 5-8). Lead Counsel developed the Plan of Allocation in consultation with Plaintiff's damages consultant with the objective of equitably distributing the Net Settlement Fund. ¶¶25-29. It was developed based on an event study, which calculated the estimated amount of artificial inflation in the per share closing prices of Intrusion securities as a result of Defendants' alleged materially false and misleading statements and omissions. ¶26.

Under the Plan of Allocation, a "Recognized Loss" will be calculated for each purchase of a Intrusion common stock. Bravata Dec. at Ex. A (Notice at pp. 5-8). The calculation of Recognized Losses is explained in detail in the Notice and incorporates several factors, including when and for what price the Intrusion securities were purchased and sold, and the estimated artificial inflation in the respective stock prices at the time of purchase and sale. *Id. see also In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"). If a Claimant has an overall market gain in Intrusion securities during the Settlement Class Period, or did not hold any of shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the alleged fraud. *Id.,* at p. 7. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Loss. *Id.*

Lead Counsel believes that the proposed Plan of Allocation provides a fair and reasonable

method to allocate the Net Settlement Fund equitably among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action, and their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. ¶27; *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."). To date, no objections to the Plan of Allocation have been filed on this Court's docket or received by Lead Counsel, suggesting that the Settlement Class also finds the Plan of Allocation to be fair and reasonable. ¶24. Moreover, similar plans have repeatedly been approved by federal courts in securities class actions. *See, e.g.*, *City of Omaha*, 2015 WL 965693, at *15 (approving plan of allocation where "[u]nder the Plan, each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses."). Accordingly, Plaintiff respectfully submits that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

## VIII.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and finally certify the Settlement Class for the purposes of settlement.

Dated: November 2, 2022.                    Respectfully submitted,

                                                            **THE ROSEN LAW FIRM, P.A.**

                                                            By*: /s/ Brent J. LaPointe*
                                                            Brent J. LaPointe (*pro hac vice*)
                                                            Phillip Kim (*pro hac vice*)
                                                            275 Madison Avenue, 40th Floor
                                                            New York, New York 10016

Tel: (212) 686-1060
Fax: (212) 202-3827
Email: blapointe@rosenlegal.com
Email: pkim@rosenlegal.com

*Lead Counsel for the Plaintiff and the Class*

**COCHRAN LAW PLLC**

 */s/ Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No. 24027936
8140 Walnut Hill Lane, St. 250
Dallas, Texas 75231
Tel: (469) 333-3405
Email: stuart@scochranlaw.com

*Liaison Counsel for Plaintiff and the Class*


## CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(i) and having conferred with counsel for all Defendants in this action, this Motion is Unopposed.

 */s/ Brent J. LaPointe*
Brent LaPointe


## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

 */s/ Stuart L. Cochran*
Stuart L. Cochran