# Exhibit A

NERA
ECONOMIC CONSULTING

25 January 2022



# Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review

Over 10% of New Federal Filings Were Related to Special Purpose Acquisition Companies

Substantially Fewer Merger Objections Filed, Leading to a Decline in Aggregate New Filings

Total Resolutions, Average and Median Settlement Values Declined

By Janeen McIntosh and Svetlana Starykh

Insight in Economics™

## Foreword

I am excited to share NERA's Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review with you. This year's edition builds on work carried out over three decades by many members of NERA's Securities and Finance Practice. This year's report continues our analyses of trends in filings and settlements and presents new analyses related to current topics such as special purpose acquisition companies. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work related to securities litigations. On behalf of NERA's Securities and Finance Practice, I thank you for taking the time to review our work and hope you find it informative.

Dr. David Tabak
Managing Director



# Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review

## Over 10% of New Federal Filings Were Related to Special Purpose Acquisition Companies
## Substantially Fewer Merger Objections Filed, Leading to a Decline in Aggregate New Filings
## Total Resolutions, Average and Median Settlement Values Declined

By Janeen McIntosh and Svetlana Starykh[1]

25 January 2022

## Introduction

For the first time since 2016, fewer than 300 new federal securities class action suits were filed.[2] There were 205 cases filed in 2021, a decline from the 321 suits filed in 2020. Although substantially lower than the number of cases filed annually between 2017 and 2019, the 2021 level is well within the pre-2017 historical range. The decline in the aggregate number of new cases filed was driven by the notable decrease in the number of merger-objection suits in 2021. More specifically, new merger-objection filings declined by more than 85% between 2020 and 2021. Of the new cases filed in 2021, over 30% were filed against defendants in the electronic technology and services sector and 40% were filed in the Second Circuit. The most common allegation included in the complaints was misled future performance while the proportion of cases with an allegation related to merger-integration issues doubled, driven primarily by the numerous filings related to special purpose acquisition companies. In 2021, there were 20 securities class action cases filed with a COVID-19-related claim alleged in the complaint, a decrease from the 33 suits filed in 2020.

Of the 239 cases resolved in 2021, 153 were dismissed and 86 resolved through a settlement. This is a decline in total dismissed cases and total resolutions relative to 2020. Compared to 2020, there was an increase in both dismissed and settled non-merger-objection cases. There was a substantial decrease in merger-objection cases dismissed and one more such suit settled than in 2020. This decline in the number of dismissed merger-objection cases not only offset the increase in standard case resolutions, but also led to a lower aggregate number of cases resolved in 2021.

An evaluation of securities class action suits filed and resolved between 1 January 2000 and 31 December 2021 reveals the vast majority had a motion to dismiss filed. Of the 96% of cases with a motion to dismiss filed, a decision was reached in 73% of the cases prior to resolution of the case. Of the cases with a decision on a motion to dismiss, approximately 56% were granted. Among the same group of cases, a motion for class certification was filed in only 16% of the securities class actions. Of that 16%, a decision was reached in 56% of the cases prior to the case resolution, with the motion for class certification granted in 83% of the cases with a decision.

In 2021, aggregate settlements amounted to $1.8 billion, with more than 50% of this amount associated with the top 10 highest settlements for the year. The average settlement value decreased by over 50% in 2021 to $21 million, the lowest recorded average in the last 10 years. Given that there were no "mega" settlements (settlements of $1 billion or greater) in 2021, the average settlement value after excluding "mega" settlements remains unchanged at $21 million. For 2021, the median settlement value was $8 million, the lowest recorded median value since 2017. The median annual settlement value for 2021 is approximately 40% lower than the inflation-adjusted median value observed in the prior three years.

## Trends in Filings

Following the passage of PSLRA in 1996, there have been over 100 federal securities class action (SCA) suits filed each year. With the exception of 2001, when numerous IPO laddering cases were filed, there were fewer than 300 new cases filed annually between 1996 and 2016. In 2017, there were substantially more new suits filed, with more than 415 annual cases recorded—a trend that continued through 2019. This uptick in filings was mostly due to the considerable increase in merger-objection cases. However, in both 2020 and 2021, this higher annual level of new cases filed did not persist.[3]

For the second consecutive year, new securities class action filings declined, falling to the lowest level since 2009. In 2021, there were 205 new cases filed, which is more than 50% lower than the annual levels of filings recorded each year between 2017 and 2019. See Figure 1.

Figure 1. **Federal Filings and Number of Companies Listed in the United States**
January 1996–December 2021



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2021 listings data is as of September 2021.

In addition to analyzing trends in aggregate filings, we also evaluated the number of filings relative to the number of companies listed on the NYSE and Nasdaq exchanges. There were 5,956 listed companies as of September 2021, which represents a 15% increase over the 2020 level and a noteworthy change from the minor year-to-year fluctuations observed between 2016 and 2019.

Even though there was a significant decrease in new federal SCA filings in 2021, the decline was not consistent across all case types. While new filings of Rule 10b-5 and Section 11 and/or Section 12 cases increased, new filings of merger objections, Rule 10b-5 only, Section 11 and/or 12 only, and other SCA cases declined. The most notable was the decline in merger-objection filings, which decreased by more than 85% from 103 new filings in 2020 to only 14 new filings in 2021. See Figure 2.

Figure 2. **Federal Filings by Type**
January 2012–December 2021



Since 2018, the percentage of securities class action suits filed against defendants in the electronic technology and services sector has shown steady growth. Of the new cases filed in 2017, less than 15% were filed against defendants in the electronic technology and services sector compared to over 30% against defendants in the same sector in 2021. Between 2019 and 2021, the percentage of securities class action suits filed against defendants in the health technology and services sector also increased from 20% to 26%. See Figure 3.

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections
January 2017–December 2021



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

In 2020, we observed a spike in new federal securities class action filings in the Ninth Circuit. This pattern did not persist in 2021. In 2021, the Second Circuit received the highest number of new SCA cases filed while the number of filings in the Ninth Circuit returned to pre-2020 levels. However, the number of new filings in the Third Circuit declined to a five-year low with fewer than 15 cases filed in this circuit in 2021. See Figure 4.

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections
January 2017–December 2021



Of the new federal securities class action cases filed in 2021, 40% alleged violations related to misleading future performance, the most common alleged violation for the year.[4] Allegations of violations related to missed earnings guidance continue to be a common allegation, with 24% of cases involving this claim. The percentage of cases alleging violations of accounting issues and regulatory issues declined in 2021, each occurring in less than 20% of new cases filed. In 2021, there was an uptick in the number of SCA filings with an allegation related to merger-integration issues included in the complaint. This increase was driven by the substantial number of cases involving special purpose acquisition companies (SPAC) filed in 2021. Excluding these SPAC cases, only 5% of cases included an allegation related to merger-integration issues. See Figure 5.

Figure 5. **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2017–December 2021



## Event-Driven and Special Cases

As part of our annual review process, we identify potential development areas for securities class action filings and review any new trends on previously identified areas.[5] Below, we summarize some of these areas for the last three years.

### COVID-19

The first federal securities class action suit with claims related to COVID-19 included in the complaint was filed in March 2020. Since then, there have been a total of 52 additional suits. In 2021, there were 20 securities class action cases filed with a COVID-19-related claim, a decrease from the 33 suits filed in 2020. While the Ninth Circuit was the jurisdiction with the highest percentage of COVID-19-related filings in 2020, the Second Circuit was the most common venue in 2021.

Of the 2021 cases filed with a COVID-19-related claim in the complaint, 50% were against defendants in the technology services economic sector. Among the 2020 cases filed with a COVID-19 claim, only 15% were against defendants within this sector. See Figure 6.

Figure 6. **Percentage of COVID-19-Related Federal Filings by Sector and Year**
March 2020–December 2021



Note: Due to rounding, percentages may not add to 100%.

In 2020, a violation related to regulatory issues was the most common allegation among the COVID-19-related cases. However, in 2021, only one case with a COVID-19 claim included an allegation of regulatory issues. In contrast, the most common allegation included in the COVID-19-related suits filed in 2021 related to future performance. See Figure 7.

Figure 7. **Percentage of COVID-19-Related Federal Filings by Allegation and Year**
March 2020–December 2021



Note: Due to rounding, percentages may not add to 100%.

## SPAC

In 2021, numerous federal cases were filed related to special purpose acquisition companies (SPACs). Between January 2021 and December 2021, a total of 24 cases related to SPACs were filed, a substantial increase from the one case filed in 2020.

These suits were filed against defendants in a number of sectors, with defendants in the consumer durables, technology services, and finance sectors being the most frequently targeted in 2020–2021. See Figure 8.

Figure 8. **Number of SPAC-Related Federal Filings by Sector**
December 2020–December 2021



Of the 25 SPAC cases filed in 2020 and 2021, all but one included an allegation related to merger-integration issues. Claims related to misleading earnings guidance were found in 11 of the 25 SPAC cases. In total, these suits included 49 allegations, or an average of approximately two allegations per suit. See Figure 9.

Figure 9. **Number of SPAC-Related Federal Filings by Allegation**
December 2020–December 2021



Figure 10. **Event-Driven and Other Special Cases by Filing Year**
January 2019–December 2021



### Bribery/Kickbacks

In 2019 and 2020, there were eight and six bribery/kickback-related securities class action cases filed, respectively. However, in 2021, there were no such cases filed. See Figure 10.

### Cannabis

Over the 2019–2020 period, 13 cases were filed against defendants in the cannabis industry. In 2021, only one such securities class action case was filed. See Figure 10.

### Cybersecurity Breach

Unlike some other development or special interest areas, securities class action filings related to a cybersecurity breach continued to be filed in 2021. In both 2019 and 2020 individually, three cases were filed related to a cybersecurity breach. While still only a handful of cases, there was an increase in 2021 with five such cases filed. See Figure 10.

### Environment

In 2021, there was one environment-related case filed. This is a decrease from the five cases filed in 2020 and the four cases filed in 2019. See Figure 10.

### Money Laundering

In total, six cases with claims of money laundering were filed in the 2019–2020 period, with three cases filed each year. No cases with money laundering claims were filed in 2021. See Figure 10.

## Trends in Resolutions

Resolutions consist of both dismissed and settled cases.[6] In any one year, the aggregate number of resolutions may be affected by changes in either or both categories. For our analysis, we review changes within these categories as well as the trends for merger objections and non-merger-objection cases separately. In addition, we review the current status of securities class action suits filed in the last 10 years.

In 2021, 239 cases were resolved, the lowest recorded level of resolutions since 2015. Of those, 153 were dismissed and 86 resolved through a settlement. This is a decrease in both aggregate resolutions and dismissals compared to 2020. However, compared to the pre-2017 resolutions, the 239 cases resolved is well within the historical range of annual resolutions. See Figure 11.

Figure 11. **Number of Resolved Cases: Dismissed or Settled**
January 2012–December 2021



A review of the resolution pattern by type of case reveals differing trends. Although not a substantial increase, the number of non-merger-objection resolutions in 2021 was the highest recorded in the last 10 years. While there was a modest increase in both the number of non-merger-objection suits dismissed and settled relative to 2020, there was a decrease in dismissed merger-objection cases. In fact, the number of merger-objection suits dismissed in 2021 was more than 80% fewer than the number of similar suits dismissed in 2020. This decline in the number of dismissed merger-objection suits was more than sufficient to offset the increase in Rule 10b-5, Section 11, and/or 12 case (standard case) resolutions, resulting in a lower aggregate number of cases resolved in 2021.

For each filing year since 2015, more cases have been resolved in favor of the defendant than have been settled. This is consistent with historical trends, which have indicated that settlements typically occur later in the litigation process. Reviewing cases filed in 2020, as of December 2020, 6% were dismissed and 94% remained pending.[7] For the same group of cases, as of December 2021, 28% were dismissed and only 2% were settled. Of the cases filed in 2021, a higher proportion of cases were dismissed in the year of filing than the cases filed in 2020, with 10% dismissed as of year-end 2021. See Figure 12.

Figure 12. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections and Verdicts
January 2012–December 2021



Note: Dismissals may include dismissals without prejudice and dismissals under appeal.

While 83% of cases resolve in four years or less, over half of cases are resolved between one and three years after filing.[8] See Figure 13.

Figure 13. **Time from First Complaint Filing to Resolution**
Excludes Merger Objections and Laddering Cases
Cases Filed January 2003–December 2017 and Resolved January 2003–December 2021



*"The number of merger-objection suits dismissed in 2021 was more than 80% fewer than the number of similar suits dismissed in 2020. This decline in the number of dismissed merger-objection suits was more than sufficient to offset the increase in standard case resolutions, resulting in a lower aggregate number of cases resolved in 2021."*

## Analysis of Motions

In addition to tracking filing and resolution information for federal securities class actions, NERA also tracks decisions on motions to dismiss and motions for class certification, and the status of any motion as of the resolution of each case.[9]

### Motion to Dismiss

Of the securities class action cases filed and resolved between 1 January 2012 and 31 December 2021, a motion to dismiss was filed in 96%. Among those, a decision was reached in 73% of cases. Of the cases with a decision on a motion to dismiss, approximately 56% were granted while only 19% were denied. Lastly, of the 96% of cases with a motion to dismiss filed, plaintiffs voluntarily dismissed the action in 17%, while the motion to dismiss was withdrawn by defendants only in an additional 2%. See Figure 14.

Figure 14. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2012–December 2021



### Motion for Class Certification

A motion for class certification was filed in less than 20% of the securities class action suits filed and resolved between 1 January 2012 and 31 December 2021. This is partly due to the fact that a substantial number of cases are either dismissed or settled before the class-certification stage of the case is reached. A decision was reached in 56% of the cases where a motion for class certification was filed, with the motion being withdrawn by plaintiffs in an additional 1% of the cases. Among the cases with a decision, the motion for class certification was granted in 83% and partially granted and partially denied in an additional 1% of cases. See Figure 15.

Figure 15. **Filing and Resolutions of Motions for Class Certification**
Cases Filed and Resolved January 2012–December 2021



Approximately half of decisions on motions for class certification occur between two and three years after the filing of the first complaint. See Figure 16.

Figure 16. **Time from First Complaint Filing to Class Certification Decision**
Cases Filed and Resolved January 2012–December 2021



"*A motion for class certification was filed in less than 20% of the securities class action suits filed and resolved between 1 January 2012 and 31 December 2021.*"

## Trends in Settlement Values

In 2021, aggregate settlements amounted to $1.8 billion. This amount is $400 million lower than the inflation-adjusted $2.2 billion aggregate settlement amount in 2019, and considerably lower than the inflation-adjusted amounts of $3.1 billion and $5.2 billion in 2020 and 2018, respectively. Trends in settlement values can be evaluated using a variety of metrics, including distributions of settlement values, average settlement values, and median settlement values. While annual average settlement values can be a helpful statistic, these values may be impacted by one or, in some cases, a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high "outlier" settlement amounts and gives insight into the most frequent settlement amounts. To understand what more "typical" cases look like, we also analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these "outlier" settlement amounts. For the analysis of settlement values, our data is limited to non-merger-objection cases with positive settlement values.[10]

Figure 17. **Average Settlement Value**
Excludes Merger Objections and Settlements for $0 to the Class
January 2012–December 2021



The average settlement value in 2021 was $21 million, which is more than 50% lower than the 2020 inflation-adjusted average of $47 million and marks the lowest recorded average in the last 10 years. The inflation-adjusted average settlement value has ranged from a low of $21 million in 2021 to a high of inflation-adjusted $96 million in 2013, partly due to the presence or absence of one or two "outlier" or "mega" settlements, which for this purpose are single case settlements of $1 billion or higher. See Figure 17. Unlike in 2020 when there was one "mega" settlement, there were no cases resolved with a settlement amount above $1 billion in 2021. In fact, the highest recorded settlement amount is 2021 was $155 million.

Once settlements greater than $1 billion are excluded, the inflation-adjusted annual average settlement values trend is more stable, ranging from $21 million to $33 million in the last five years. In this group of settlements, the average settlement value for 2021 was $21 million, still the lowest annual average within the most recent 10 years. See Figure 18.

Figure 18. **Average Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, and Settlements for $0 to the Class
January 2012–December 2021



While there was a shift upward in the annual distribution of nominal settlement values between 2017 and 2020, this trend did not persist in 2021. Instead, in 2021, nearly 60% of cases resolved for settlement amounts less than $10 million. This increase in the proportion of cases settling for lower values in 2021 was accompanied by a decrease in the proportion of cases resolving for $100 million or greater, with fewer than 5% of settlements falling in this range. See Figure 19.

Figure 19. **Distribution of Settlement Values**
Excludes Merger Objections and Settlements for $0 to the Class
January 2017–December 2021



The median annual settlement value for 2021 is approximately 40% lower than the inflation-adjusted median value observed in 2018, 2019, and 2020. For 2021, the median settlement value was $8 million, the lowest recorded median value since 2017. See Figure 20.

Figure 20. **Median Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, and Settlements for $0 to the Class
January 2012–December 2021



## Top Settlements in 2021

Table 1 summarizes the 10 largest settlements reached in securities class action suits between 1 January 2021 and 31 December 2021. In total, the 10 largest settlements accounted for more than 50% of the aggregate settlement amount reached in 2021. Six of the top 10 settlements were reached with defendants in the health technology and services or technology services economic sectors. The Second Circuit was the most common circuit for these cases, accounting for four of the top 10 settlements.

Table 1. **Top 10 2021 Securities Class Action Settlements**

| Ranking | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Snap, Inc. | 16 May 17 | 09 Mar 21 | $154.7 | $41.0 | 9th | Technology Services |
| 2 | DaVita Inc. | 1 Feb 17 | 30 Mar 21 | $135.0 | $41.0 | 10th | Health Services |
| 3 | Allergan plc (f/k/a Actavis plc) | 22 Dec 16 | 17 Nov 21 | $130.0 | $35.2 | 3rd | Health Technology |
| 4 | Tableau Software, Inc. | 28 Jul 17 | 14 Sep 21 | $95.0 | $27.7 | 2nd | Technology Services |
| 5 | Cognizant Technology Solutions Corp. | 5 Oct 16 | 20 Dec 21 | $95.0 | $19.5 | 3rd | Technology Services |
| 6 | The Southern Company | 20 Jan 17 | 05 Feb 21 | $87.5 | $24.9 | 11th | Utilities |
| 7 | MetLife, Inc. | 12 Jan 12 | 14 Apr 21 | $84.0 | $23.5 | 2nd | Finance |
| 8 | Towers Watson & Co. | 21 Nov 17 | 21 May 21 | $75.0 | $13.7 | 4th | Commercial Services |
| 9 | CannTrust Holdings Inc. | 10 Jul 19 | 02 Dec 21 | $66.4 | N/A* | 2nd | Health Technology |
| 10 | Chemical and Mining Company of Chile Inc. | 19 Mar 15 | 26 Apr 21 | $62.5 | $12.1 | 2nd | Process Industries |
| | **Total** | | | **$985.1** | **$238.5** | | |

*Fees only, expenses are not available yet.

Table 2 summarizes the 10 largest federal securities class action settlements since the passage of PSLRA. Since the Petrobras settlement in 2018, the settlements in this list have all been above $1 billion, ranging from $1.1 billion to $7.2 billion.

Table 2. **Top 10 Federal Securities Class Action Settlements** (As of 31 December 2021)

| Ranking | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Codefendent Settlements | | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
| | | | | | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 01 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 02 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 98 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 02 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.- Petrobras | 8 Dec 14 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 Jul 02 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 09 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 02 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Nortel Networks | 2 Mar 01 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| 10 | Royal Ahold, NV | 25 Feb 03 | 2006 | $1,100 | $0 | $0 | $170 | 2nd | Retail trade |
| | **Total** | | | **$32,224** | **$13,249** | **$1,017** | **$3,368** | | |

## NERA-Defined Investor Losses

To estimate the potential aggregate loss to investors as a result of purchasing the defendant's stock during the alleged class period, NERA has developed its own proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Losses measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable is the most powerful predictor of settlement amount.[11]

While settlement values are highly correlated with Investor Losses, the relationship between settlement amount and Investor Losses is not linear. More specifically, the ratio is higher for smaller cases than for cases with larger NERA-Defined Investor Losses. See Figure 21.

Figure 21. **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Investor Losses
Cases Filed and Settled December 2012–December 2021



The median Investor Losses for cases settled in 2021 was $731 million, the highest recorded value since 2013, but less than 5% higher than the 2020 value. Over the last 10 years, the annual median Investor Losses have ranged from a high of $785 million to a low of $358 million. Following an uptick in the median ratio of settlement amount to Investor Losses in 2017 to 2.5%, the ratio declined through 2019, with only modest increases in both 2020 and 2021. See Figure 22.

Figure 22. **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2012–December 2021



In analyzing drivers of settlement amounts, NERA has identified the following key factors:

- NERA-Defined Investor Losses, as defined above;
- The market capitalization of the issuer immediately after the end of the class period;
- The types of securities, in addition to common stock, alleged to have been affected by the fraud;
- Variables that serve as a proxy for the merit of plaintiffs' allegations (such as whether the company has already been sanctioned by a governmental or regulatory agency or paid a fine in connection with the allegations);
- The stage of litigation at the time of settlement; and
- Whether an institution or public pension fund is lead or named plaintiff.

Among cases settled between December 2012 and September 2021, these factors account for a substantial fraction of the variation observed in actual settlements. See Figure 23.

Figure 23. **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled December 2012–September 2021



## Trends in Plaintiffs' Attorneys' Fees and Expenses

Plaintiffs' attorneys' fees and expenses related to work on securities class action suits have varied substantially over time by settlement size. However, the median of plaintiffs' attorneys' fees and expenses as a percentage of settlement amount has been fairly consistent since 1996.

Between 2012 and 2020, the annual aggregate plaintiffs' attorneys' fees and expenses ranged from a low of $467 million in 2017 to a high of $1.6 billion in 2016. For 2021, the aggregate plaintiffs' attorneys' fees and expenses associated with settled cases was $451 million. Given the absence of any settlements above $500 million in 2021, similar to 2019, there were no plaintiffs' attorneys' fees and expenses associated with settlements of $500 million or higher. And while there was an increase in the aggregate fees and expenses for settlements under $100 million, there was an offsetting decrease in the aggregate fees and expenses for settlements between $100 million and $500 million. See Figure 24.

Figure 24. **Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size**
January 2012–December 2021



As settlement size increases, fees and expenses represent a declining percentage of settlement value. More specifically, while the percentage is only 10.5% for cases that settled for over $1 billion in the last 10 years, for cases with settlement amounts under $5 million, fees and expenses represent 34% of the settlement. See Figure 25.

Figure 25. **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections and Settlements for $0 to the Class



## Conclusion

New securities class action cases filed declined to 205 in 2021, the lowest number of annual filings in the last 10 years but well within the historical range. This decline in total filings was driven primarily by the 85% decrease in merger-objection cases between 2020 and 2021. Due to the numerous filings related to SPACs, the percentage of cases alleging a violation related to merger integration issues increased to 17% while violations related to misled future performance, the most common allegation, were included in 40% of the 2021 suits filed. In 2021, there was a decline in total resolutions, resulting from a notable decrease in the number of merger-objection cases dismissed.

Of the 96% of cases with a motion to dismiss filed, a decision was reached in 73% of the cases prior to resolution of the case, with the motion to dismiss granted in approximately 56% of these cases. Among cases with a motion for class certification filed, a decision was reached in 56% prior to the case resolution, with the motion for class certification granted in 83% of the cases with a decision.

Aggregate settlements in 2021 amounted to $1.8 billion, the lowest total in the 2018–2021 period. No cases resolved with a settlement amount of $1 billion or higher in the last year. The average settlement value for all non-merger-objection cases with positive settlement values, and cases of less than $1 billion, decreased in 2021 to $21 million. The median settlement value showed a similar trend, declining by approximately 40% to $8 million.

## Notes

1 This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank researchers in NERA's Securities and Finance Practice for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2 Data for this report were collected from multiple sources, including Institutional Shareholder Services, complaints, case dockets, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, and public press reports.

3 NERA tracks class actions involving securities that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. However, the first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are directionally similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings.

4 Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and, as such, the total number of allegations exceeds the total number of filings.

5 It is important to note that, due to the small number of cases in some of these categories, the findings summarized here may be driven by one or two cases.

6 Here the word "dismissed" is used as shorthand for all cases resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an unsuccessful motion for class certification.

7 See Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review," NERA Economic Consulting, p. 13, Figure 11, available at https://www.nera.com/publications/archive/2021/recent-trends-in-securities-class-action-litigation--2020-full-y.html.

8 Analyses in this section exclude IPO laddering cases and merger-objection cases.

9 NERA's analysis of motions only includes securities class action suits involving common stock, with or without other securities, and an allegation of Rule 10b-5 violation alone or accompanied by Section 11, and/or Section 12 violation.

10 For our analysis, NERA includes settlements that have had the first hearing of approval of case settlement by the court. This means we do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. When evaluating trends in average and median settlement values, we limit our data to non-merger-objection cases with settlements of more than $0 to the class.

11 NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock over a defined class period. As a result, we have not calculated this metric for cases such as merger objections.

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For more than six decades, we have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. Continuing our legacy as the first international economic consultancy, NERA serves clients from major cities across North America, Europe, and Asia Pacific.

## Contacts

For further information, please contact:



**Janeen McIntosh**
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



**Svetlana Starykh**
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*



To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.





Visit **www.nera.com** to learn more about our practice areas and global offices.

© Copyright 2022
National Economic Research Associates, Inc.

All rights reserved.
Printed in the USA.