**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| JAMES CELESTE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO, <br><br> Defendants. | § CIVIL ACTION NO. 4:21-cv-00307-SDJ <br> § **[LEAD CASE]** <br> § <br> § <br> § CLASS ACTION <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |
| GEORGE NEELY and JOAN NEELY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO, <br><br> Defendants. | § CIVIL ACTION NO. 4:21-cv-00374-SDJ <br> § **[CONSOLIDATED]** <br> § <br> § CLASS ACTION <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**DECLARATION OF PHILLIP KIM IN SUPPORT OF: (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, Phillip Kim, hereby declares, under penalty of perjury as follows:

1.      I am a partner at The Rosen Law Firm, P.A. ("Rosen Law Firm"), Court-appointed Lead Counsel for court-appointed Lead Plaintiff Andrew Bronstein ("Lead Plaintiff" or "Plaintiff"), in the above-referenced Action. I have personal knowledge of the facts set out below and am competent to testify with respect thereto.[1]

2.      I submit this Declaration in support of Lead Plaintiff's Motions for: Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Award of Attorneys' Fees and Reimbursement of Expenses (collectively, the "Motions"). The Motions are filed concurrently herewith.

3.      The purpose of this Declaration is to set forth to the Court facts that do not otherwise appear in documents filed in this case or other public sources. A complete description of the nature of the claims asserted and the procedural history of the Action, and the reasons why the settlement, plan of allocation, and fee and expense requests should be approved are set out in the memoranda of law in support of the Motions.

4.      Through the Settlement, Defendants will pay $3,250,000 in cash in exchange for the release of all claims Lead Plaintiff asserted against Intrusion, Inc. ("Intrusion" or the "Company"), Jack B. Blount, Michael L. Paxton, B. Franklin Byrd, T. Joe Head, Gary Davis, and James Gero (collectively, "Defendants" and with Plaintiffs, the "Settling Parties") and completely resolves this Action.

5.      The Settlement results from extensive arm's-length settlement negotiations among experienced counsel. Through a formal mediation session, counsel for the Settling Parties

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Revised Stipulation and Agreement of Settlement dated September 30, 2022.  ECF No. 58.

vigorously debated the strengths and weaknesses of the claims and defenses in this Action. Lead Counsel's ability to reach a compromise in light of the many complex issues presented in this litigation evidences the quality of their representation.

## I.    RISKS AND COSTS OF LITIGATION

6.      Lead Counsel foresee protracted investigation and litigation if the Settlement was not reached. While Lead Plaintiff believes he can prevail in this Action, there are material challenges including resolution of the motion to dismiss stage, extensive discovery, class certification, summary judgment, and trial. Should Lead Plaintiff's claims survive Defendants' summary judgment motions, it would take several weeks to try the claims. Lead Counsel believes the trial would be complex and expensive as both sides would likely have numerous experts opining on damages and liability issues—and this does not include the extensive *Daubert* motion practice that would precede such testimony.

7.      Litigating this case through trial require an extraordinary commitment of time, money, and resources by Lead Counsel, and the likelihood of an appeal will force Settlement Class Members to wait even longer to see a recovery (if any). Lead Counsel believes this lengthy delay reduces the present value of a hypothetical victory when compared to the certainty of an immediate settlement.

## II.   PROCEDURAL HISTORY

8.      This is a federal securities class action alleging that Defendants committed securities fraud and violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). The Amended Class Action Complaint for Violation of the Federal Securities Law (the "Amended Complaint" or "Compl.") (ECF No. 38) alleges claims on

behalf of all persons who purchased or otherwise acquired Intrusion securities between October 14, 2020, and August 26, 2021, inclusive (the "Class Period").

9.      This action was filed on April 16, 2021 (ECF No. 1). Andrew Bronstein timely moved for appointment under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* ECF No. 15. The Court duly appointed Mr. Bronstein as Lead Plaintiff and approved his selection of The Rosen Law Firm, P.A. as Lead Counsel ("Lead Counsel"). ECF No. 32.

10.     On February 7, 2022, Lead Plaintiff filed the Amended Complaint. ECF No. 38. On March 21, 2022, Plaintiff filed an unopposed motion to substitute Cochran Law PLLC for Steckler Wayne Cochran PLLC as Liaison Counsel, which the Court granted on March 23, 2022. *See* ECF Nos. 44-45.

11.     On April 5, 2022, the parties attended a full-day meditation with Mr. Jed Melnick, Esq. of JAMS, a highly experienced, neutral mediator. Prior to the mediation session, the parties exchanged mediation statements, and the parties debated the strengths and weaknesses of the claims and defenses in this action. The Settling Parties reached a settlement in principle during the mediation. The Settling Parties executed a settlement term sheet to resolve this action the same day.

12.     Under the settlement term sheet, the Settling Parties agreed to cease all litigation activities except those related to the negotiation of the final settlement and preparation for seeking preliminary approval of the settlement. On April 12, 2022, the Settling Parties filed a joint motion to stay further proceedings pending the filing of a motion for preliminary approval (ECF No. 47).

13.     Lead Plaintiff filed his Motion and Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Original Preliminary Approval Motion") together with the Parties' Stipulation and Agreement of Settlement ("Original

Stipulation") on June 24, 2022. (ECF No. 50-51) The Court held a telephonic status hearing on July 7, 2022, in which it offered comments and suggestions to clarify the Original Stipulation and related briefing (ECF Nos. 52-53). On August 10, 2022, Lead Plaintiff filed a Revised Motion and Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Revised Motion") and Revised Stipulation and Agreement of Settlement, dated as of June 1, 2022 ("Revised Stipulation") (ECF No. 55). The Court granted Lead Plaintiff's Revised Motion on August 17, 2022 (ECF No. 56), thereby triggering the process of notifying Settlement Class Members to submit claims, request exclusion, or object to the settlement.

### III.    FACTS

14.    Intrusion is a Delaware corporation headquartered in Plano, Texas,[2] that develops, sells, and supports products that purport to protect entities from cyberattacks by combining advanced threat intelligence with real-time artificial intelligence.

15.    The Amended Complaint alleges that during the Class Period, Defendants made various false and misleading statement concerning a new network security product—called Intrusion Shield ("Shield")—which they represented would use proprietary artificial intelligence technology to analyze, identify, and automatically block cyberattacks, specifically including "zero-day" attacks. Specifically, the Amended Complaint alleges that: (1) Shield's purported artificial intelligence solution did not work and could not be made to work in the way Intrusion suggested; (2) Intrusion had falsely represented that Shield was able to analyze threats in real-time and prevent novel cyberattacks, including specifically "zero-day" attacks; (3) Intrusion had falsely claimed to have secured contracts with Kimberly-Clark, Lippert Components, and others for 50,000 or more seats to be covered by Shield; (4) Defendants falsified its purported internal testing of the Shield

---

[2] The Company's stock trades on the NASDAQ under the ticker symbol "INTZ".

solution by using fake test bed data; (5) Defendants generated artificial appearance of demand for Shield by shipping units for free; (6) Shield products were catastrophically failing in early customer rollout, including shutting down networks due to being shipped in "fail closed" configuration and numerous, "cascading" bugs and software failures; (7) Shield products were failing so pervasively in early customer rollout that customers were running the devices in "observation" mode; and (8) Shield products were generating so many error reports that Intrusion's engineering and customer support staff simply turned off alerts, while concealing functional failures from Intrusion sales personnel, and therefore from potential customers, and that, as a result, Defendants' statements about Intrusion's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. *See generally* ECF No. 38.

16.     The Amended Complaint further alleges that on April 14, 2021, the market began to learn the truth when market researcher White Diamond Research released a report alleging, among other things, that Intrusion's product, Shield, "has no patents, certifications, or insurance, which are all essential for selling cybersecurity products" and that "Shield is based on open-source data already available to the public." Thus, the report stated that "Shield is a repackaging of pre-existing technology rather than an innovative offering." On April 22, 2019, Intrusion issued a press release in which it claimed to "provide information refuting negative claims in [the] recently published short report," which Lead Plaintiff alleged was false and materially misleading in itself, but which served to buoy the price of Intrusion's stock. In a subsequent earnings call on May 4, 2022, Intrusion, through Defendants Byrd and Blount, made a number of additional statements concerning signing agreements to sell its Shield product to two large multinational corporations,

that Shield revenue was in the process of "ramp up", and that Intrusion expected its headcount of sales personnel to remain "largely stable." *See generally* ECF No. 38.

17.    On June 20, 2021, Intrusion issued another press release announcing preliminary revenue figures for the second quarter, revealing "slower than anticipated sales ramp" along with "strategic actions" and "organizational changes," including that Defendant Blount had "left the company effective immediately and no longer [had] any affiliation with Intrusion." The Amended Complaint alleges that this revelation precipitated another steep decline in Intrusion's stock price. Subsequent statements in SEC filings revealed on July 23, 2021 that Blount's services had been "terminated", and on August 26, 2021, that the Company received a notification from the SEC Division of Enforcement that it was conducting an investigation. *See generally* ECF No. 38.

18.    Defendants dispute Lead Plaintiff's allegations. In light of the risks and expenses of continued litigation, settlement of the action now provides class members with a certain cash recovery.

### IV.    NEGOITIATIONS AND MEDIATION

19.    The Settling Parties participated in lengthy discussions about the relative merits of the case, obstacles to recovery, and potential liability. Lead Counsel and Defendants' Counsel zealously represented the positions of their respective parties throughout.

20.    On April 5, 2022, the Settling Parties participated in a full-day mediation before Jed Melnick, Esq., of JAMS, a respected mediator. Before this mediation, the Settling Parties exchanged detailed mediation statements, discussing all relevant stages of the litigation, and issues of contention, including issues related to experts. The mediation was successful. After reaching an agreement in principle the settlement the matter, counsel for the Settling Parties diligently negotiated the key substantive terms of their agreement and memorialized them in a Settlement

term sheet the same day. The Parties continued to advocate zealously for their respective positions in negotiating the terms of the Original Stipulation and the Revised Stipulation.

## V.    SETTLEMENT

21.    The Settlement provides the Class with $3,250,000 in cash. With maximum damages estimated at $42.7 million, the Settlement returns approximately 7.61% of maximum possible damages.

22.    Given the previously-discussed risks and costs of pursuing additional litigation, including the very real risk of a smaller or even no recovery following years of additional litigation, the serious and unresolved disputes between the Settling Parties concerning the merits of Lead Plaintiff's claims, and based upon my analysis of the facts adduced to date and my years of past experience litigating complex securities class actions, I believe that the benefits of the Settlement outweigh the potential costs. Accordingly, the Settlement is therefore in the best interest of the Settlement Class.

23.    The favorable reaction of the Settlement Class provides further evidence of the fairness of the Settlement. To date, the Claims Administrator and Lead Counsel have not received any valid requests for exclusion[3] and no objections to the Settlement have been received or filed with the Court.

---

[3] The Claims Administrator received one putative request for exclusion on October 31, 2022. The request consisted of a one-sentence, handwritten note, delivered by facsimile from a UPS Store, and included no documentation of the sender's holdings or mailing address. The Claims Administrator has sent letters to two potential mailing addresses identified through public record search.

## VI.   THE PLAN OF ALLOCATION SHOULD BE APPROVED AS IT IS FAIR AND REASONABLE

24.    The objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among Authorized Claimants who suffered economic loss because of Defendants' alleged fraud as opposed to losses caused by market or industry factors not related to the alleged fraud.

25.    The Plan of Allocation was formulated by Lead Counsel, in consultation with a well-respected and experienced financial consultant, based on an event study that calculated the estimated amount of artificial inflation in the per share closing prices of Intrusion securities as a result of Defendants' alleged materially false and misleading statements and omissions. The Plan of Allocation was designed to ensure that the distribution of the settlement fund was fair and consistent with Lead Plaintiff's theory of the case which asserted that there were declines in the price of Intrusion's securities reflecting disclosures of the truth relating to the alleged misconduct as well as to ensure that the allocation comported with the federal securities laws, including principles of loss causation and negative causation.

26.    Lead Counsel and its consulting expert determined this was the fairest method of allocation of the Net Settlement Fund.

27.    Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund equitably among Settlement Class Members who suffered losses as result of the conduct alleged in the Amended Complaint. The proposed Plan of Allocation reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability asserted in the Action.

28.    The Plan of Allocation is set forth at pp. 5-8 of the Notice, attached as **Exhibit A** to Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B)

Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (the "Bravata Declaration"), filed with the Court on October 3, 2022 (ECF No. 59-2).

### VII.    LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

29.    Lead Counsel, Rosen Law Firm, is a nationally-recognized law firm in securities litigation and class actions. Rosen Law invested significant resources and brought substantial experience to bear in litigating this action on behalf of, and for the benefit of, the Settlement Class. Lead Counsel has many years of experience in complex federal civil litigation, particularly the litigation of shareholder, securities, and other class actions. *See* Exhibit C (Firm Resume of Rosen Law Firm) to the Declaration of Phillip Kim on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Reimbursement of Expenses ("Kim Fee Declaration"), a true and correct copy of which are attached hereto as **Exhibit 1.**

30.    As set forth in the time reports in the Kim Fee Declaration (Exhibit 1), Rosen Law Firm has committed 631.75 hours to litigating this Action.

31.    As set forth in the time reports in the Declaration of Stuart Cochran on Behalf of Cochran Law LLP Concerning Attorneys' Fees and Expenses ("Cochran Fee Dec."), a true and correct copy of which is attached hereto as **Exhibit 2**, Liaison Counsel has spent 16.75 hours supporting the litigation of this Action.

32.    To litigate this Action, Lead Counsel: (1) moved, pursuant to the PSLRA, for appointment of Andrew Bronstein as Lead Plaintiff and Rosen Law Firm. as Lead Counsel; (2) retained a private investigator and oversaw investigative interviews of witnesses, including several former employees, including identifying witnesses and developing leads; (3) deliberated with a damages expert to identify corrective disclosure dates and damages scenarios; (4) drafted and filed a detailed 58-page Amended Complaint (*see* ECF No. 38); (5) engaged in settlement negotiations

and drafted a detailed mediation brief; (6) attended a full-day mediation and memorialized the substantive settlement terms in a settlement term sheet; (7) drafted and negotiated the Original and Revised versions of the Stipulation and Agreement of Settlement and exhibits thereto, and filed them alongside Lead Plaintiff's Original and Revised motions for preliminary approval of the Settlement; (8) supervised the program to provide notice to the Settlement Class, and (10) drafted motion papers and supporting documents in support of final approval of the settlement.

33.     Based on the hours expended by Lead Counsel and the current billing rates for Lead Counsel's professionals, the total lodestar is $467,783.00.

34.     The following table provides a summary of the lodestar analysis:

| Firm | Hours | Lodestar |
|---|---|---|
| The Rosen Law Firm, P.A. | 631.75 | $462,789.25 |
| Steckler Wayne Cochran Cherry PLLC | 16.75 | $4,993.75 |
| **Total** | 648.5 | **$467,783.00** |
| Requested Fee | $1,083,332.00 | |
| **Multiplier** | **2.32** | |

35.     The following table provides a summary of Lead Counsel's unreimbursed expenses:

| Category of Expenses | Amount |
|---|---|
| PRO HAC VICE AND CERTIFICATES OF GOOD STANDING | $200.00 |
| FINANCIAL EXPERT | $4,282.00 |
| MEDIATORS | $14,391.76 |
| ONLINE RESEARCH | $768.48 |
| INVESTIGATOR FEES | $9,045.00 |
| PRESS RELEASES AND NOTICE TO CLASS | $3,765.48 |
| TRAVEL, MEALS, HOTELS, TRANSPORTATION (includes estimated expenses for Settlement Fairness Hearing) | $2,764.17 |
| **TOTAL EXPENSES:** | **$35,216.89** |

36.     These litigation expenses are well-documented, based on the books and records maintained by Lead Counsel, and reflect the costs of prosecuting this Action.

## VIII.    NOMINAL AWARD TO LEAD PLAINTIFF

37.     Lead Plaintiff provided a substantial and necessary service to the Settlement Class by participating in the Action and supervising Lead Counsel's prosecution of the Action and subsequent settlement.  Like the requested fee and expenses, the Notice advised Settlement Class Members that Lead Plaintiff would seek an award of up to $5,000. No objection has been submitted relating to this award.

38.      Lead Plaintiff seeks an award in the amount of $5,000 for his lost time and effort in the prosecution and oversight of this action pursuant to the PSLRA. As demonstrated in the Declaration of Andrew Bronstein, a true and correct copy attached hereto as **Exhibit 3**, Lead Plaintiff was actively involved in this litigation, reviewed the filings, participated in the settlement negotiations, discussed case strategy and engaged in numerous communications with counsel. Lead Plaintiff's efforts in this case were crucial to and led to the successful resolution of this matter.

39.     Given these important contributions and the time and effort expended by Lead Plaintiff, a nominal award of $5,000 is warranted.

40.     Accordingly, Lead Counsel respectfully request that the Court grant the requested award.  *See Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("Without [Plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible.").

Case 4:21-cv-00307-SDJ    Document 66-1    Filed 11/03/22    Page 13 of 15 PageID #: 1514

## IX.    EXHIBITS

41. Attached to this Declaration are true and correct copies of the following

documents:

Exhibit 1:    Declaration of Phillip Kim on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Reimbursement of Expenses;

Exhibit 2:    Declaration of Stuart Cochran on behalf of Steckler Wayne Cochran Cherry PLLC Concerning Attorneys' Fees and Expenses;

Exhibit 3:    Declaration of Lead Plaintiff Andrew Bronstein in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses;

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2022

*/s/ Phillip Kim*
Phillip Kim

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By*: /s/ Brent J. LaPointe*
Brent J. LaPointe (*pro hac vice*)
Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: blapointe@rosenlegal.com
Email: pkim@rosenlegal.com

*Lead Counsel for the Plaintiff and the Class*

**COCHRAN LAW PLLC**
By: */s/ Stuart L. Cochran*

Stuart L. Cochran
Texas Bar No. 24027936
8140 Walnut Hill Lane, St. 250
Dallas, Texas 75231
Tel: (469) 333-3405
Email: stuart@scochranlaw.com

*Liaison Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Stuart Cochran*
STUART COCHRAN

- 1 -