UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES CELESTE, Individually and On Behalf of All Others Similarly Situated | § § § § | CIVIL NO. 4:21-CV-307-SDJ **LEAD CASE** |
| GEORGE NEELY, ET AL., Individually and On Behalf of All Others Similarly Situated v. | § § § § § | CIVIL NO. 4:21-CV-374-SDJ |
| INTRUSION INC., ET AL. | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

In this consolidated class action arising from alleged securities violations, the named parties have agreed to settle the case for $3,250,000.00. No objections to the proposed settlement or valid requests for exclusion have been submitted. After full consideration, the Court concludes that the proposed settlement should be approved and that the Lead Plaintiff and class counsel should be awarded attorney's fees and expenses.

Therefore, the Court **GRANTS** Lead Plaintiff Andrew Bronstein's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation. (Dkt. #65). In doing so, the Court certifies the proposed class and disposes of all claims in this consolidated class action between Bronstein and the class members, on the one hand, and Defendants Intrusion, Inc., Jack B. Blount, Michael L. Paxton, B.

1

Franklin Byrd, T. Joe Head,[1] Gary Davis, and James Gero (collectively, "Intrusion"), on the other.

The Court also **GRANTS** Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses. (Dkt. #66).

## I. BACKGROUND

Bronstein and Intrusion have agreed to settle the claims in this consolidated class action for $3,250,000.00. The proposed settlement arises from more than a year of litigation surrounding Intrusion's alleged efforts to artificially boost its share price through misrepresentations regarding a new cybersecurity product: "Intrusion Shield." After obtaining preliminary approval of the proposed class settlement on August 17, 2022, Bronstein and class counsel now seek final approval and an award of attorney's fees and expenses.

## A. Intrusion's Efforts to Artificially Boost Its Share Price

Intrusion is a publicly traded cybersecurity company. In the summer of 2020, it developed a new product that would supposedly "revolutionize the [network security] industry." (Dkt. #38 ¶ 58). Intrusion described this new product, Intrusion Shield, as blocking cyberthreats more effectively than existing technologies on the market because it combined state-of-of the-art artificial intelligence tools with a proprietary database of 2.7 billion malicious IP addresses. (Dkt. #38 ¶¶ 46, 58).

---

[1] The Amended Class Action Complaint, (Dkt. #38), names "P. Joe Head" as a Defendant as opposed to "T. Joe Head." This Order references the Defendant as T. Joe Head because that is the name used in the Unopposed Motion for Final Approval of Class Action Settlement. (Dkt. #65).

Intrusion Shield was marketed through promotional videos published on the internet, investor calls, government filings, and press releases. *See, e.g.*, (Dkt. #38 ¶¶ 47–48, 58, 60, 67). In one press release, for example, Intrusion announced that during beta testing with thirteen companies Intrusion Shield had successfully blocked more than 75 million cyberthreats emanating from over 800,000 unique malicious entities. (Dkt. #38 ¶ 60). In another press release, Intrusion allegedly asserted that the product could prevent "zero-day" attacks: in other words, attacks that exploit previously unknown cybersecurity weaknesses. (Dkt. #38 ¶¶ 42, 65).

These representations allegedly boosted Intrusion's stock price to over $28.00 per share by April 2021. (Dkt. #38 ¶ 125). But within a few months, Intrusion's stock price dropped to under $4.00 per share. (Dkt. #38 ¶ 11). Bronstein alleges that the stock price dropped because Intrusion Shield did not perform as investors expected. Far from revolutionizing the industry, it merely repackaged existing products. (Dkt. #38 ¶ 2). And instead of shutting down cyberthreats, it shut down customer computer networks. (Dkt. #38 ¶ 7). Bronstein also alleges that, based on employee reports and third-party research, Intrusion's representations about the product were not just false but knowingly false and calculated to boost Intrusion's stock price ahead of a potential sale. *See, e.g.*, (Dkt. #38 ¶¶ 1, 3, 8, 41, 119–24).

## B. The Resulting Class Action Litigation

Intrusion's alleged misrepresentations regarding Intrusion Shield gave rise to two federal securities class actions in this Court: one filed in April 2021, and the other filed in May of the same year. (Dkt. #1, #31). After consolidating these cases, (Dkt. #31), appointing Bronstein as Lead Plaintiff, (Dkt. #32 at 6–7), and appointing

The Rosen Law Firm, P.A. as class counsel (and Steckler Wayne Cochran Cherry, PLLC as liaison counsel), (Dkt. #32 at 6–7), the Court ordered Bronstein to file an amended complaint. (Dkt. #37).

Bronstein filed the amended complaint on February 7, 2022, asserting two causes of action under the Securities Exchange Act of 1934: (1) violation of Section 10(b) against all Defendants; and (2) violation of Section 20(a) against the individual Defendants. (Dkt. #38). The amended complaint asserted damages against Intrusion under a "fraud-on-the-market" theory—seeking to hold the company responsible for artificially boosting its share price through alleged misstatements regarding Intrusion Shield. (Dkt. #38 ¶¶ 11, 125–29); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268, 134 S.Ct. 2398, 189 L. Ed. 2d 339 (2014).

Class counsel diligently litigated the case, achieving a proposed class settlement in June 2022. (Dkt. #51). Class counsel's efforts to secure the proposed settlement included an extensive pre-suit investigation, consultations with damages experts, negotiations with opposing counsel, and participation in a full-day mediation. (Dkt. #65-2 ¶ 32).

## C. The Proposed Class Action Settlement

The proposed class settlement disposes of all claims in this consolidated class action for $3,250,000.00. The proposed class settlement value represents 7.61% of the maximum possible damages that could have been recovered at trial, according to Bronstein's damages calculations. (Dkt. #65 at 19); (Dkt. #65-2 ¶ 21).

The proposed class settlement disposes of all claims in this consolidated class action not only between Bronstein and Intrusion, but also between Intrusion and the

proposed class members. The proposed class includes any person or entity who purchased (or otherwise acquired) Intrusion stock between October 14, 2020, and August 26, 2021. (Dkt. #38 ¶ 1). Under the proposed settlement, each class member would receive a pro rata share of the settlement fund based on the number of shares purchased during the relevant period, accounting for both the purchase price and the sale price. (Dkt. 55-1 at 7–10); (Dkt. #65 at 24).

Following the Court's preliminary approval of the proposed class action settlement on August 17, 2022, (Dkt. #56), Bronstein diligently notified the potential class members of the proposed settlement. Potential class members were notified by several methods—including postcard notice, email notice, and a published summary notice[2]—resulting in delivery of notices to nearly 29,000 potential class members. (Dkt. #72-1 ¶ 3). Over 1,000 potential class members responded to the notice. Significantly, no class members objected to the proposed settlement. (Dkt. #72-1 ¶ 8). And only two class members requested exclusion from the proposed settlement. (Dkt. #72-1 ¶ 7). Those two requests are invalid, however, because they did not comply with basic requirements for submitting a request for exclusion. (Dkt. #72-1 ¶ 7).

Bronstein now moves for final approval of the proposed class settlement and for attorney's fees and expenses. (Dkt. #65, #66). Intrusion does not oppose these motions. The Court held a settlement fairness hearing on November 30, 2022, to

---

[2] These notices were delivered through a third-party administrator. The administrator also maintained a webpage and toll-free line to inform class members of the settlement and instruct them on submitting claims. (Dkt. #72-1 ¶¶ 5–6).

evaluate the proposed settlement's fairness, reasonableness, and adequacy to all class members. (Dkt. #73). No class members appeared at the hearing. The November 9, 2022, deadline for objecting to the proposed class settlement or requesting exclusion from it has passed. (Dkt. #56 ¶ 37).

## II. Legal Standard

The Court's responsibilities in evaluating a class action settlement run not only to the named parties, but also to the unnamed class members. The Court must ensure that the class members receive adequate notice of the settlement and an opportunity to object or request exclusion from it. Fed. R. Civ. P. 23(e)(1); *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1219 (5th Cir. 1978). The Court also must ensure that that the settlement is "fair, reasonable, and adequate" to the class members under the four factors enumerated in Federal Rule of Civil Procedure 23(e)(2): (1) adequacy of the representation, (2) fairness of the negotiations (i.e., whether the negotiations were at arm's length), (3) adequacy of the relief, and (4) equitability of treatment to class members. The adequacy of relief factor turns on several considerations, including the risks of proceeding to trial.[3] Fed. R. Civ. P. 23(e)(2)(C).

In addition to the nonexclusive Rule 23 factors, courts in this circuit often consider the *Reed* factors in evaluating the fairness, reasonableness, and adequacy of a proposed class settlement: "(1) the existence of fraud or collusion behind the

---

[3] The Rule 23 factors were added by amendment in 2018. According to the Advisory Committee, these factors do not "displace any factor" sanctioned by the circuit courts. Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendments. Instead, they were added to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citations omitted); *ODonnell v. Harris Cty.*, No. 16-CV-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (observing that "courts in this circuit often combine [the Rule 23 and *Reed* factors] in analyzing class settlements.").

## III. DISCUSSION

The Court finds that the motion for final approval of the proposed class settlement should be granted. The proposed settlement is fair, reasonable, and adequate to the class members. The class members each received adequate notice of the settlement and the settlement will be effectively distributed through the plan of allocation. The Court therefore certifies the proposed class, approves the class settlement, and awards Bronstein and class counsel the requested attorney's fees and expenses.

## A. The Proposed Class Settlement Is Fair, Reasonable, and Adequate.

The proposed class settlement is fair, reasonable, and adequate under both the Rule 23 and *Reed* factors.

### i. Adequacy of Class Representation

The record establishes that Bronstein and class counsel adequately represented the settlement class in litigating this complex securities case and in negotiating the proposed settlement agreement. Bronstein is an Intrusion securities

investor who suffered the same alleged injuries as the other class members. His motivations are therefore aligned with the other class members, reducing the likelihood of a conflict of interest. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Bronstein also actively participated in the case by communicating with counsel and participating in settlement negotiations, further demonstrating the adequacy of his representation. (Dkt. #65-5 ¶¶ 3–7).

Class counsel diligently prosecuted the case on behalf of the class. In addition to drafting pleadings and negotiating the settlement agreement, counsel also investigated the claims, retained a private investigator, consulted with damages experts, drafted detailed mediation statements, and participated in a full-day mediation. (Dkt. #65-2 ¶ 32). Counsel was competent and informed and ably represented not only Bronstein, but also the proposed class. *See Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019) (approving class settlement agreement negotiated by "a law firm with substantial experience in litigating complex class actions").

### ii. Arm's Length Negotiations, Fraud, and Collusion

The proposed settlement agreement is not the product of fraud or collusion; instead, it arises from extensive arm's length negotiations between sophisticated counsel. The parties entered the proposed settlement agreement after a full-day mediation—which "suggests the settlement was not the result of improper dealings." *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227,

8

at *4 (N.D. Tex. Apr. 25, 2018). The mediator, Jed D. Melnick, had substantial experience mediating complex securities actions, lending further support to the agreement's legitimacy. *See Gordon v. Vanda Pharm. Inc.*, No. 19-CV-1108, 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (holding that mediation conducted by Jed D. Melnick, "a highly qualified mediator[,] strongly supports a finding that the negotiations were conducted at arm's length without collusion"); *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JLS, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."). In any event, the Court may presume the absence of any fraud or collusion when, as here, no evidence has been presented to the contrary. *See Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

### iii. Adequacy of Relief; Expected Complexity, Expense, and Duration of the Litigation

The proposed settlement agreement provides adequate relief to the class. True, the proposed $3,250,000.00 settlement represents only 7.61% of the total recovery that class members could have obtained at trial based on Bronstein's damages model. (Dkt. #65 at 19); (Dkt. #65-2 ¶ 21). But federal courts have long recognized that, when faced with the expense and unpredictability of ongoing litigation, it often makes good sense to settle for even small fractions of the total amount in controversy. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (observing that settling "avoids the risks and burdens of potentially protracted litigation").

That is especially true when the case involves complex issues like those presented in this consolidated securities class action. Securities claims are particularly "difficult to prove" because of the high bar for establishing falsity and scienter. *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011); *Fishoff v. Coty Inc.*, No. 09-CV-628, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011). A trial would therefore likely be "lengthy, burdensome, and would consume tremendous time and resources." *Hays*, 2019 WL 427331, at *10. After the trial concluded, the losing party would likely appeal the judgement, causing further delay and additional expense.

Because any future recovery would be burdensome and unpredictable, Bronstein opted for a settlement that is immediate and guaranteed. That settlement will adequately and fairly compensate the class. This settlement is also in line with other class settlement agreements that have been approved by federal courts.[4] *See, e.g.*, *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (observing that courts frequently approve class action settlements even when the settlement amount is a small fraction of what class plaintiffs could recover at trial); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *7 (W.D. La. Mar. 3, 2015) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.").

---

[4] As explained below, *see infra* Part III(D), the proposed settlement is also adequate considering "the terms of any proposed award of attorney's fees." FED. R. CIV. P. 23(e)(2)(C)(iii).

The proposed settlement is adequate not only in its amount considering the risks of proceeding to trial, but also in two additional ways contemplated in Rule 23's adequacy factor:

*First*, the proposed settlement's allocation plan distributes the settlement fund through a reasonable process. Counsel has retained a third-party administrator to process the claims, assist claimants in curing deficiencies, and distribute funds on a pro rata basis. (Dkt. #72-1). The Court finds that the proposed distribution process will adequately deliver settlement funds to the class members.

*Second*, the proposed settlement is reasonable considering any agreements made in connection with the proposed settlement. Although Intrusion may terminate the proposed settlement under a confidential agreement if enough class members request exclusion from it, (Dkt. #50 at 14–15), the Court finds that this agreement is fair under the circumstances and does not undermine the adequacy of the proposed settlement's relief to the class. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *1, 5 (approving a class settlement with a similar confidentiality provision). The parties have also filed a stipulation that publicly discloses the proposed settlement's terms. (Dkt. #55).

### iv. Equitable Distribution

The proposed settlement's allocation plan equitably distributes proceeds between the class members. When an allocation plan is "formulated by competent and experienced counsel," it will generally be upheld if it is supported by a "reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (quotations omitted).

Here, the allocation plan is supported by a reasonable basis. It was developed with the assistance of a damages consultant and provides each class member a pro rata share of the settlement fund based on the number of shares purchased during the relevant period. (Dkt. #55-1 at 7–10); (Dkt. #65 at 24). In calculating each class member's pro rata share of the settlement fund, the allocation plan accounts for the timing and price of each purchase, as well as the timing and price of any eventual sale, as is common in securities class actions. *See, e.g.*, *City of Omaha Police & Fire Ret. Sys.*, 2015 WL 965693, at *15 (approving a class action allocation plan in which each class member would receive a pro rata share of a recognized loss); *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 241 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) (collecting cases approving similar allocation plans).

### v. Stage of Proceedings and Discovery Efforts

The stage of proceedings and discovery efforts factor also weighs in favor of approving the proposed settlement. In evaluating this factor, the key issue is whether the parties and court possess sufficient information to "evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. Even when the parties "have not conducted much formal discovery," this factor can be satisfied when other information demonstrates that the settlement should be approved. *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 653 (N.D. Tex. 2010); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) ("[F]ormal discovery is not a prerequisite to approving a [class] settlement as reasonable."). That conclusion flows naturally from the general principle that early settlements should be encouraged, not hindered,

12

so long as the parties have obtained the "desired quantum of information necessary to achieve a settlement." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014) (quotations omitted).

Here, the parties have obtained ample information to achieve an informed settlement. To begin, Bronstein's counsel engaged in an extensive pre-suit investigation to determine the strength of the claims against Intrusion. (Dkt. #65-2 ¶ 32). This pre-suit investigation involved reviewing public documents, including SEC filings and analyst reports, and retaining a private investigator. (Dkt. #65 at 15); (Dkt. #65-2 ¶ 32). Following the pre-suit investigation, the parties extensively negotiated the proposed settlement and participated in a full-day mediation with an experienced mediator, which enabled the parties to develop a "full understanding of the legal and factual issues surrounding [the] case" before agreeing to the proposed settlement. *Manchaca v. Chater*, 927 F.Supp. 962, 967 (E.D. Tex. 1996).

### vi. Probability of Success on the Merits

The proposed settlement's fairness, reasonableness, and adequacy is further demonstrated by the uncertainty of success should the case proceed to trial. When there has been no showing of fraud or collusion, the probability of success is the most important factor in evaluating a proposed settlement. *Smith v. Crystian*, 91 F.App'x. 952, 955 n.3 (5th Cir. 2004) (per curiam) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). This factor requires the court to "compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). But in comparing the settlement's terms with the potential rewards at trial, the court

must avoid "try[ing] the case in the settlement hearings." *Reed*, 703 F.2d at 172. That would undermine the settlement's "very purpose," which is to "avoid the delay and expense of such a trial." *Id.* (quotations omitted).

Here, the claims against Intrusion are hotly contested and difficult to prove. Against Bronstein's efforts to develop these claims through extensive investigation and expert analysis, Intrusion has retained sophisticated counsel to oppose these efforts and would likely continue opposing them through trial and appeal. Intrusion would no doubt challenge the sufficiency of Bronstein's proof on a notoriously difficult element in a securities claim: scienter. *See Stott*, 277 F.R.D. at 343 (noting that securities claims are "difficult to prove").

Even if Bronstein established Intrusion's liability for the alleged securities violations, he would face additional challenges certifying a class and establishing damages on a class-wide basis. For example, it is likely that Intrusion would vigorously dispute the connection between its alleged wrongdoing and the drop in its stock price. If Bronstein could prove that connection, Intrusion could still dispute what portion of the drop was attributable to its actions as opposed to other causes.

The result would be a protracted battle of the experts that is avoided through the proposed settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 236, 286 (3d Cir. 2001) (approving class action settlement in securities litigation in which competing positions on damages issues would have devolved into a "battle of the experts"); *In re OCA, Inc. Sec. & Derivative Litig.*, No. CV-05-2165, 2009 WL 512081, at *14 (E.D. La. Mar. 2, 2009) ("Because the jury would have been faced with

competing expert opinions, the resulting damage award would have been highly unpredictable.").

### vii. Range and Certainty of Recovery

The range and certainty of recovery factor also weighs in favor of approving the proposed settlement. In evaluating this factor, the Court must begin by establishing a "range of possible damages that could be recovered at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (quotations omitted). After establishing the range of possible damages that could be recovered at trial, the Court then determines whether the settlement is "pegged at a [fair] point in the range" in light of the "likelihood of prevailing at trial and other factors." *Id.* (quotations omitted).

As explained in the discussion of the above factors, *see supra* Part III(A)(i)–(vi), Bronstein and the class faced considerable risks in proceeding to trial. Considering these risks, it is far from guaranteed that the class would have recovered even a fraction of the total amount in controversy. Thus, while the high end of the class's potential recovery was $42.7 million, (Dkt. #65 at 19), the low end of the class's potential recovery was $0.00—with the balance of probabilities weighing in favor of recovery closer to the low end than to the high end.

The $3,250,000.00 settlement is therefore pegged at a fair point in the range of total recovery. It represents 7.61% of the class's total potential recovery, which is a respectable percentage given the uncertainties of proceeding to trial, the complexities of class action lawsuits, and the difficulties in proving securities violations. (Dkt. #65 at 19); (Dkt. #65-2 ¶ 21). Indeed, it is common in class action

lawsuits for plaintiffs to recover only "three-to-six cents on the dollar." *City of Omaha Police & Fire Ret. Sys.*, 2015 WL 965696, at *7.

### viii. Opinions of Participants and Absent Class Members

The virtually unanimous support for the proposed settlement also demonstrates its fairness, reasonableness, and adequacy. The named parties and class counsel all believe that the proposed settlement is a favorable outcome for both the active participants in the litigation and the absent class members. That the parties and class counsel unanimously support the proposed settlement is an important fact weighing in favor of its approval because, "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). And here, the parties and counsel, all of whom are sophisticated, have vigorously defended their respective positions, lending further support for the settlement's fairness.

In addition to the named parties and class counsel, the absent class members also appear to support the proposed settlement. Out of nearly 29,000 potential class members who received notice of the settlement, and more than 1,000 potential class members who responded to the notice, no potential class members objected to the proposed settlement or validly requested to be excluded from it. (Dkt. #72-1 ¶¶ 7–8). This lack of objection from the class members supports the "adequacy of the settlement." *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *5 (quotations omitted).

## B. The Class Members Received Adequate Notice of the Proposed Settlement.

The Court also finds that the class members received adequate notice of the proposed settlement. The adequacy of a class settlement notice is not governed by "rigid rules." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005); *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *3 n.1. Instead, the notice must satisfy the "broad reasonableness standard[]" imposed by due process and Rule 23(e). *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (quotations omitted). To satisfy that standard, the notice must provide class members with "information reasonably necessary" to decide whether to object to the settlement or not. *Id.* The standard does not require, however, "actual notice to each party" to be bound by the settlement. *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *3 n.1 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313–14 (1950)).

Here, the class notices were adequate both in timing and content. In terms of timing, class counsel published and distributed the class settlement notices forty days before the deadline to object to the settlement. (Dkt. #56 at 18–19); (Dkt. #72-1 ¶ 3). These efforts resulted in delivery of notices to nearly 29,000 potential class members by email or postcard before the objection deadline. (Dkt. #72-1 ¶ 3). The Court finds, therefore, that the notice procedures provided class members ample time to object to the settlement if they wished to do so. *See DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 947 (10th Cir. 2005) (holding that the class members received adequate notice of a class settlement when the notices were "sent out nearly two weeks prior to the settlement hearing").

In terms of content, the notices adequately informed the class members of the nature of the settlement and the procedures for objecting or submitting a claim. The notices were delivered through multiple mediums—including email, postcards, publication, and a website—increasing the likelihood that class members would receive the notices and understand them. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *3 (holding that notices delivered through similar procedures satisfied the Rule 23 requirements). These efforts satisfy due process and Rule 23.[5]

## C. The Proposed Class Meets the Requirements for Class Certification.

The proposed class also meets the requirements for class certification and should be certified. The Court first addresses the threshold requirements for class certification under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The Court then addresses the additional requirements for class certification under Rule 23(b), concluding that class certification is justified under the predominance and superiority prong. A proposed class must satisfy these requirements even when it is certified for settlement purposes only.

Here, the proposed class includes any person or entity who purchased or acquired Intrusion stock from October 14, 2020, through August 26, 2021. (Dkt. #38 ¶ 1).

---

[5] The PSLRA imposes additional requirements for class settlement notices. For example, the notice must include the amount of the proposed settlement, contact information for class counsel, and a brief statement supporting the proposed settlement. 15 U.S.C. § 78u-4(a)(7)(A)–(F). The Court finds that these additional requirements were satisfied in this case.

### i. Numerosity

The proposed class is sufficiently numerous that "joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). As a publicly traded company, Intrusion likely had at least hundreds of shareholders during the relevant period. When class action claims involve "nationally traded securities," courts generally assume that the numerosity requirement is satisfied. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981).

### ii. Commonality

The proposed class shares common questions of law or fact. Each class member is an Intrusion shareholder from the relevant period. And each shareholder suffered the same alleged injury—a decline in Intrusion stock price—arising from the same alleged misstatements. The claims are therefore identical among the class members. *See Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445 (W.D. Tex. 2019) (holding that the commonality requirement was satisfied in a securities class action in which the defendants made "uniform misrepresentations and omissions to the class").

### iii. Typicality

Bronstein's claims against Intrusion are typical of those belonging to the class. He was an Intrusion shareholder who suffered the same alleged injuries as the other class members arising from the same alleged wrongdoing. *See id.* at 446 (holding that plaintiff shareholder's claims were typical of those belonging to the class).

### iv. Adequacy of Representation

Bronstein and class counsel fairly and adequately represented the class. *See supra* Part III(A)(i). As an Intrusion securities investor, Bronstein's motivations were

19

aligned with the absent class members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. at 77. In keeping with these motivations, Bronstein actively participated in the case to secure a favorable outcome. (Dkt. #65-5 ¶¶ 3–7). Class counsel was competent and experienced, ably representing the class. Class counsel's efforts to secure a favorable settlement included investigating the claims, consulting with damages experts, and negotiating a favorable settlement. (Dkt. #65-2 ¶ 32).

### v. Predominance and Superiority

In addition to meeting the threshold requirements for class certification under Rule 23(a), the proposed class also satisfies the predominance and superiority requirements of Rule 23(b)(3). Rule 23(b)(3) is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks and citation omitted). The rule's twin requirements of "predominance" and "superiority" must each be satisfied. *See, e.g., Sykes v. Mel. S. Harris & Assocs. LLC*, 780 F.3d 70, 81–82 (2d Cir. 2015) (describing Rule 23(b)(3)'s "disjunctive inquiry," which requires separate determinations as to "predominance" and "superiority"); *see also Amchem*, 521 U.S. at 615.

Here, the class issues predominate over individual issues. That is true because the class members share identical claims against Intrusion. And each claim presents virtually identical questions of law and fact, except that some class member may have suffered different amounts of damages compared to others. *See Amchem Prods., Inc.*,

521 U.S. at 625 (observing that the predominance prong is "readily met" in certain securities fraud cases).

Class adjudication is also superior to individual adjudication of the issues in these consolidated cases. Many class members would be unmotivated to prosecute their claims because the "cost of bringing individual suits" would likely "outweigh the recovery obtained." *Rooney*, 330 F.R.D. at 451–52. And class adjudication resolves the claims quickly and more efficiently than deciding each claim on an individual basis. Class adjudication is especially preferred for securities fraud cases like this one because—given "the expense and burden that such litigation . . . entail[s]"—the claims would likely "never be heard" otherwise. *In re Reliant Sec. Litig.*, No. H-02-1810, 2005 WL 8152605, at *9 (S.D. Tex. Feb. 18, 2005).

\*   \*   \*   \*

Because the proposed class meets both the threshold requirements for class certification under Rule 23(a) as well as the additional requirements of predominance and superiority under Rule 23(b)(3), the Court concludes that the proposed class should be and is certified.

## D. Class Counsel Is Entitled to Attorney's Fees.

Class counsel has established not only the fairness of the proposed settlement and grounds for certifying the class, but also a basis for recovering attorney's fees. Under the common fund doctrine, a lawyer can retain a reasonable portion of a fund obtained on behalf of others. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself

or his client is entitled to a reasonable attorney's fee from the fund as a whole."). The common fund doctrine ensures that attorneys are fairly compensated for their efforts and encourages them to undertake risky litigation for which no reward is guaranteed. *See id.*; *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).

To invoke the common fund doctrine in a class action case, a lawyer must demonstrate his compliance with Rule 23's procedural requirements and the reasonableness of the fees requested. Here, Bronstein's counsel complied with Rule 23's procedural requirements by notifying the class members of the requested fees through publication, mail, or email—affording each class member an opportunity to object—and by filing a motion requesting the fees. FED. R. CIV. P. 23(h).

Bronstein's counsel also established the reasonableness of the fees requested. In common fund cases, the Court may evaluate the reasonableness of the requested fees using one of two methods: the percentage method or the lodestar method. *See Union Asset Mgmt. Holding A.G.*, 669 F.3d at 644 ("We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations.").

Alternatively, the court may employ both methods, checking them against each other, to confirm the reasonableness of the total award. *See, e.g.*, *Evans v. TIN, Inc.*, No. CV 11-2182, 2013 WL 4501061, at *6 (E.D. La. Aug. 21, 2013). No matter the method employed, the Court must always apply the twelve *Johnson* factors to determine whether the award should be adjusted, either upward or downward, based

on the facts and circumstances of the case. *Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 354 (5th Cir. 2019) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Although the Court must explain how each factor affects the award, the explanation "need not be meticulously detailed." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (quotations omitted).

As explained below, the Court finds that the requested attorney's fees are reasonable under the percentage method. The fees require no adjustment under the *Johnson* factors. And a lodestar cross-check confirms the reasonableness of the requested fees.

### i. Percentage Method

The requested fees are reasonable under the percentage method. In keeping with its name, this method awards counsel a fixed percentage of the recovery obtained. *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 642–44. The percentage method is often the preferred method for calculating reasonable attorney's fees in common fund cases because it "aligns the interests [between] class counsel [and] the class members," encouraging successes and penalizing failure. *Id.* at 643; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). It also "allows for easy computation" in complex cases. *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 643.

The percentage method is especially favored in class actions, such as this one, arising under the Private Securities Litigation Reform Act. That is true because the percentage method aligns with a requirement in the Act that class counsel not recover more than a "reasonable percentage of the amount of any damages." 15 U.S.C. § 78u-4(a)(6). In other words, because the Act limits class counsel's recovery on a percentage

basis, courts frequently apply the percentage method when evaluating the reasonableness of fees under the Act. *See Union Asset Mgmt. Holding A.G.*, 669 F.3d at 643 ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

Here, Bronstein's counsel requests an attorney's fee award of $1,083,332.00, which amounts to one-third of the settlement fund. (Dkt. #66 at 10). The request is reasonable. Recognizing that common fund litigation is risky for counsel, on the one hand, and beneficial to the public, on the other, courts frequently award attorney's fees ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").[6]

Some courts have awarded even higher percentages. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006) (awarding class counsel 36% of the common fund); *In re Combustion, Inc.*, 968 F.Supp. 1116, 1132–33, 1135–36, 1140 (W.D. La. 1997) (awarding class counsel 36% of the common fund, amounting to approximately $46 million).

---

[6] *See also Burford v. Cargill, Inc.*, No. CV-05-0283, 2012 WL 5471985, at *2 (W.D. La. Nov. 8, 2012) ("[D]istrict courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee." (quotations omitted)); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) ("[I]t is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third" in common fund class action cases. (quotations omitted)).

The requested fees are squarely in the accepted range. And the reasonableness of the fee award is supported further by the lack of any objection to the request and by counsel's competence and diligence in prosecuting the case.

### ii. *Johnson* Factors

The fee award requires no adjustment under the *Johnson* factors. *See Johnson*, 488 F.2d at 717–19.

**Time and Labor Required.** Class counsel spent considerable time and labor achieving the proposed settlement. The time and labor factor turns on more than the number of hours worked. In common fund class action cases, in particular, an early settlement often signals counsel's "efficiency" and "effectiveness" compared to similar cases that "unnecessarily dragged on for years." *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005); *see also In re Harrah's Entm't, Inc.*, No. CV. 95-3925, 1998 WL 832574, at *5 (E.D. La. Nov. 25, 1998) (observing that "overly emphasiz[ing]" the hours worked can "penalize counsel for obtaining an early settlement" and "distort the value of the attorney's services.").

Here, class counsel achieved a favorable settlement relatively early in proceedings—before extensive discovery or dispositive motions. And class counsel obtained the favorable settlement through significant effort: investigating the claims, drafting pleadings, moving for Bronstein's appointment as Lead Plaintiff, consulting with damages experts, negotiating with opposing counsel, drafting detailed mediation materials, participating in a full-day mediation, drafting settlement documents, moving for approval of the class settlement, and supervising the delivery of notices to the class members. (Dkt. #65 at 15); (Dkt. #65-2 ¶ 32). The Court finds

25

that the requested fee award adequately compensates class counsel for these efforts, requiring no adjustment.

**_Novelty and Difficulty of Issues; Undesirability of Case._** Securities cases are "notoriously difficult and unpredictable." _Maher v. Zapata Corp._, 714 F.2d 436, 455 (5th Cir.1983). Plaintiffs face the legal obstacles of establishing scienter, materiality, loss causation, and calculation of damages, which are compounded in the class action context because counsel must obtain certification of the class and establish class damages. The Court also acknowledges that securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA. _See Buettgen v. Harless_, No. 3:09-CV-00791-K, 2013 WL 12303194, at *2 (N.D. Tex. Nov. 13, 2013). That is because the PSLRA includes both new procedural hurdles for plaintiffs, as well as alterations of the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs. _In re Ikon Office Sols., Inc._, 194 F.R.D. 166, 194–195 (E.D. Pa. 2000) (citing 15 U.S.C. § 78u–4(b)).

Given the recognized challenges associated with pursuing class claims under the PSLRA, the case was also undesirable in the sense that it required significant investment of time and resources with no guaranteed return. _See Billitteri v. Sec. Am., Inc._, No. 3:09-CV-01568-F, 2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011) (holding that the undesirability factor weighed in favor of the requested fee award when the case presented difficult issues and no recovery was assured). The requested

fee award adequately compensates counsel for undertaking a difficult and relatively undesirable case. No adjustment is required under these factors.

   ***Skill Required; Attorney Experience, Reputation, and Ability.*** Because of the difficulty and complexity of the issues, this case required skilled attorneys.[7] Here, the attorneys for both sides were adequately skilled to meet these demands: they were reputable, competent, and accomplished.

   Class counsel has significant experience litigating complex disputes in federal court, including securities class actions. *See, e.g.*, *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) (observing that the Rosen Law Firm is "highly experienced in the complex field of securities fraud class action litigation"). And class counsel obtained a favorable settlement against "formidable legal opposition"—a fact demonstrating the "superior quality of [the class] representation." *Schwartz*, 2005 WL 3148350, at *30; *see also Billitteri*, 2011 WL 3585983, at *7 ("[B]ecause of the extremely effective work of opposing counsel . . . [t]he skill required here . . . certainly justifies the contemplated award."). Indeed, Intrusion's attorneys are seasoned practitioners at prominent law firms, including Wilson Sonsini Goodrich & Rosati PC and Greenberg Traurig, LLP.

   Because the requested fee award accounts for the skill required to litigate this case and counsel's experience, reputation, and ability, no adjustment is required under these factors.

---

   [7] In evaluating the skill required for a particular case, the district court judge's "past experience as a lawyer" and his "observation[s] from the bench" are "highly important." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 789 (S.D. Tex. 2008) (quoting *Johnson*, 488 F.2d at 718).

***Preclusion from Other Employment.*** Class counsel spent nearly 650 hours litigating this case, (Dkt. #65-2 ¶ 30–31), a substantial time commitment that likely precluded counsel from working on other matters. *See Schwartz*, 2005 WL 3148350, at *31 ("The time spent by [class] counsel on this case was at the expense of time that counsel could have devoted to other matters."); *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *3 (holding that the preclusion from employment factor weighed in favor of a "substantial fee award" because the class attorneys "were often times precluded from working on other cases due to the demands of the instant matter"). Because the requested fee award adequately compensates counsel for investing considerable time into this matter, this factor does not require any adjustment.

***Fixed or Contingent Fee; Customary Fee in the Community; Awards in Similar Cases.*** Class counsel litigated this case on a contingency basis. That basis supports the requested fee award. In undertaking this representation, counsel invested significant time and resources with no guaranteed return. *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986).

When class actions are litigated on a contingency basis in the Eastern District of Texas, counsel is customarily awarded fees ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund. *Shaw*,

28

91 F.Supp.2d at 972 ("[F]ee awards in class actions average around one-third of the recovery."); *see also Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017) ("It is not unusual for attorneys' fees awarded under the percentage method to range between 25% to 30% of the [settlement] fund or more."), *adopted by* 2018 WL 307024 (E.D. Tex. Jan. 4, 2018); *Ramirez v. J.C. Penney Corp., Inc.*, No. 6:14-CV-601, 2017 WL 6462355, at *5 (E.D. Tex. Nov. 30, 2017) (same), *adopted by* 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017).

And in securities class actions specifically, courts have awarded class counsel similar amounts to compensate them for achieving favorable outcomes on difficult claims. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *12 (collecting cases supporting an award of one-third of the settlement fund in a securities class action); *See Schwartz*, 2005 WL 3148350, at *37 (collecting cases "approving [a] 30% fee in a securities class action[s]"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d at 768, 799–800 (collecting authorities supporting attorney's fees awards of approximately thirty percent in securities class actions).[8]

Here, because the requested fee award adequately compensates counsel for undertaking a securities class action on a contingency basis, and because the requested fee award is customary in the community and matches those awarded in similar cases, these factors do not require any adjustment.

---

[8] *See also Buettgen*, 2013 WL 12303143, at *10 ("[D]istrict courts in this Circuit, including this one, have repeatedly awarded fees of 30% or more of the total recovery under the percentage-of-the-recovery method in securities class actions.").

***Amount Involved and Results Obtained.*** The amount in controversy in this case is significant: $42.7 million, according to Bronstein's damages expert. (Dkt. #65 at 19). Counsel obtained 7.61% of that amount through the proposed settlement. (Dkt. #65 at 19); (Dkt. #65-2 ¶ 21). Given that plaintiffs typically recover only "three-to-six cents on the dollar" in class actions, *City of Omaha Police & Fire Ret. Sys.*, 2015 WL 965696, at *7, that is a favorable result. *See also Parker v. Anderson*, 667 F.2d 1204, 1210 (5th Cir. 1982) (observing that class settlements can be fair and adequate even when they "amount to a fraction of the potential recovery [at trial]" (quotations omitted)). This factor supports the requested fee award without need for any adjustment.

***Time Limitations; Nature and Length of Relationship with Client.*** The time limitations and client relationship factors also do not require any adjustment to the requested fee award. As for time limitations, the parties have not identified any timing constraints imposed by the clients or circumstances. *Erica P. John Fund*, 2018 WL 1942227, at *11 ("This factor does not apply in this case because there is no indication that Lead Plaintiff imposed any time limits in the prosecution of this case."); *see also In re Combustion, Inc.*, 968 F.Supp. at 1135) ("Even though it is apparent that the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered.").

And as for the nature and length of the client relationship, the Court finds that class counsel ably represented the class beginning in 2021. Both class counsel and Bronstein actively participated in the litigation for its full duration. Considering

counsel's dedication to Bronstein and to the class stretching more than a year, the requested fee award adequately compensates counsel. That conclusion is supported by Bronstein's declaration, in which he states that class counsel regularly discussed the case with him, provided "periodic status reports," and deserves the requested fees—all facts suggesting that the attorney-client relationship was strong. (Dkt. #66-4 ¶¶ 5–6, 8–9); *Erica P. John Fund*, 2018 WL 1942227, at *12 (finding that this factor weighed in favor of a requested fee award when "the professional relationship with Lead Plaintiff was positive").

### iii. Lodestar Cross-Check

A lodestar cross-check confirms the reasonableness of the fees requested. The lodestar method focuses on the work performed as opposed to the recovery obtained. To calculate the lodestar, the court multiplies the attorney's hourly rate by the hours worked. *See Hobbs v. EVO Inc.*, 7 F.4th 241, 259 (5th Cir. 2021). The burden is on the moving party to establish the reasonableness of both the rate charged and the hours billed. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011); *Swanston v. City of Plano*, No. 4:19-CV-412, 2022 WL 3567059, at *2 (E.D. Tex. Aug. 18, 2022).

Here, counsel submitted affidavits and declarations supporting a lodestar amount of $467,783.00. (Dkt. #65-2 ¶ 33–34). The affidavits and declarations do not include contemporaneous billing records, detailed time entries, or proof of the rate typically charged in the community, as would typically be required to support a claim for attorney's fees. *See Vaughan v. Lewisville Indep. Sch. Dist.*, No. 4:19-CV-109-SDJ, 2021 WL 6125786, at *5 (E.D. Tex. Dec. 28, 2021); *McClain*, 649 F.3d at 381–82. However, the submitted affidavits and declarations are sufficient under the

circumstances. No party objected to the fee request. And the Court is employing the lodestar method only as a rough cross-check to confirm the reasonableness of the percentage award. *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 867 (E.D. La. 2007) (observing that, in performing a lodestar cross-check, the court need not scrutinize each time entry and "representations by class counsel as to total hours [worked] may be sufficient" (quotations omitted)).

When a lodestar cross-check is applied to a class-action fee award in a common fund case, courts frequently use a multiplier ranging from one to four based on the *Johnson* factors. *See, e.g.*, *Burford*, 2012 WL 5471985, at *6 n.1 (approving a 1.78 multiplier and remarking that courts frequently approve multipliers ranging from one to four); *Di Giacomo v. Plains All Am. Pipeline*, No. CV-99-4137, 2001 WL 34633373, at *10–11 (S.D. Tex. Dec. 19, 2001) (approving a 5.3 multiplier in a securities class action).

Here, the *Johnson* factors, for the reasons explained above, *see supra* Part III(D)(ii), support a $1,083,332.00 attorney's fee award—which is the lodestar amount multiplied 2.32 times. That multiplier falls in the commonly accepted range. The Court finds that the lodestar cross-check confirms the reasonableness of the requested fee award.

**E. Bronstein and Class Counsel May Recover Reasonable Expenses.**

Bronstein and class counsel may recover reasonable expenses incurred during the litigation. Bronstein requests $5,000.00 for the considerable time (approximately forty hours) he invested in the case communicating with counsel, reviewing

documents, and participating in settlement negotiations. (Dkt. #66-4 ¶¶ 3–7, 11). Bronstein's request is authorized under the PSLRA, which allows a lead plaintiff to recover "reasonable costs and expenses (including lost wages) directly relating to representation of the class." 15 U.S.C. § 78u-4(a)(4).

The Court agrees that Bronstein invested considerable time and effort to this case and awards Bronstein the requested recovery of $5,000. The award is below what courts have awarded in other class action cases. *See, e.g.*, *Burford*, 2012 WL 5471985, at *6 (awarding named plaintiffs up to $15,000.00 in compensation for efforts expended representing the class); *In re Catfish Antitrust Litig.*, 939 F.Supp. 493, 504 (N.D. Miss. 1996) (awarding $10,000.00).

Class Counsel request reimbursement in the amount of $35,216.89 for expenses incurred representing the class. (Dkt. #66 at 27, 30). Counsel further requests that these expenses be awarded out of the settlement fund in addition to the $1,083,332.00 in attorney's fees. Because no class member objected to the request, counsel diligently represented the class, and counsel incurred considerable expense with no guarantee of recovery, the Court finds that the requested amount is reasonable under the circumstances and will be awarded.

## IV. CONCLUSION

The parties and counsel have diligently litigated these consolidated cases and achieved a favorable settlement not only for the named parties, but also for the absent class members. The reasonableness of the settlement is reflected by the lack of any objection to it. The Court finds that the proposed settlement should be approved, the class certified, and the requested fees and expenses awarded.

It is therefore **ORDERED** as follows:

1. The Court finally approves the proposed settlement agreement, (Dkt. #55), as fair, reasonable, and adequate under the Federal Rules of Civil Procedure. Its terms shall bind all class members.

2. The Court finally certifies a class of persons or entities that purchased or otherwise acquired Intrusion, Inc. common stock between October 14, 2020, and August 26, 2021, both dates inclusive, and were damaged thereby. The certified class excludes: (a) Defendants; (b) Intrusion, Inc.'s officers, directors, and affiliates, at all relevant times; (c) Intrusion. Inc.'s employee retirement or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired Intrusion, Inc. stock through any such plan(s); (d) any entity in which Defendants have or had controlling interest; (e) immediate family members of any excluded person; (f) the legal representatives, heirs, successors, or assigns of any excluded person or entity; and (g) all those who submit timely and valid requests for exclusion.

3. The Court dismisses with prejudice all claims in this action between the class and Defendants.

4. The Court approves the parties' proposed allocation plan as a fair and reasonable method of allocating the settlement fund among class members. The Court directs the parties to distribute through the claims administer the settlement fund in accordance with the settlement agreement and stipulation. (Dkt. #55).

5. The Court awards class counsel $1,083,332.00 in attorney's fees and $35,216.89 in expenses. The Court awards lead Plaintiff Andrew Bronstein $5,000.00 for expenses.

**So ORDERED and SIGNED this 16th day of December, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE