# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION



| | |
|---|---|
| JAMES CELESTE, Individually and on Behalf of All Others Similarly Situated, | § CIVIL ACTION NO. 4:21-cv-00307-SDJ<br>§ **[LEAD CASE]**<br>§ |
| Plaintiff, | § |
| | § CLASS ACTION |
| v. | § |
| | § |
| INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO, | § |
| Defendants. | § |
| GEORGE NEELY and JOAN NEELY, Individually and on Behalf of All Others Similarly Situated, | § CIVIL ACTION NO. 4:21-cv-00374-SDJ<br>§ **[CONSOLIDATED]**<br>§ |
| | § CLASS ACTION |
| Plaintiff, | § |
| v. | § |
| | § |
| INTRUSION, INC., JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, T. JOE HEAD, GARY DAVIS, and JAMES GERO, | § |
| Defendants. | § |

# DECLARATION OF JOSEPHINE BRAVATA
## CONCERNING THE RESULTS OF THE CLAIMS ADMINISTRATION PROCESS

I, Josephine Bravata, declare:

1.    I am the Quality Assurance Manager of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over twenty years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred and twenty-five (525) class action settlements since its

1

inception. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would testify thereto.

## UPDATE ON THE NOTIFICATION PROCESS

2.  Pursuant to the Court's Order, dated August 17, 2022 (Dkt. No. 56, the "Preliminary Approval Order"), SCS was appointed and approved as the Claims Administrator to supervise and administer the notice procedure as well as the processing of claims in connection with the Settlement of the above captioned action.[1]

3.  As noted in the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated September 30, 2022 and the Supplemental Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice, (B) Report on Requests for Exclusion and Objections, and (C) Claim Filing Status, dated November 23, 2022 (Dkt. Nos. 58 and 72-1, the "Bravata Declarations"), SCS mailed or emailed 1,784 letters to the Nominee Account Holders and Institutional Groups contained on SCS's master mailing list.  SCS then mailed 18,252 Postcard Notices to potential Settlement Class Members or nominees. SCS was also notified by three nominees that they mailed the Postcard Notice to 78 of their customers, and SCS was notified by another nominee that they emailed 10,376 of their clients a direct link to the Summary Notice on the settlement webpage.  Since the Bravata Declarations were filed, no additional Postcard Notices were mailed, and no additional emails were sent with the direct link to the Summary Notice by the nominees.  To date, a total of 28,706 potential Settlement Class

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Revised Stipulation and Agreement of Settlement, dated June 1, 2022 (Dkt. No. 55, the "Stipulation").

Members were notified either by mailed Postcard Notice or emailed a direct link to the Summary Notice.

### UPDATE ON TOLL-FREE PHONE LINE

4.    The Bravata Declarations noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement and/or request a Notice and Claim. SCS continues to promptly respond to each telephone inquiry and will continue to address Settlement Class Members inquiries.

### UPDATE ON SETTLEMENT WEBPAGE

5.    As noted in the Bravata Declarations, on August 13, 2022, SCS established a webpage for the Settlement on its website at www.strategicclaims.net/Intrusion/. The webpage is accessible 24 hours a day, 7 days a week.  SCS continues to maintain the webpage.  The webpage contains the current status; the case deadlines; the online claim filing link; and the important documents. To date, the webpage has received 17,460 pageviews from 3,716 unique users.

### STATUS OF CLAIMS PROCESSING

6.    Through November 16, 2022, 1,634 Claim Forms (hereafter referred to as "claims") were submitted in connection with this settlement.[2]  SCS has carefully reviewed, analyzed, and processed all of these claims, and has responded to all claimant inquiries regarding the action, the settlement and the procedures for filling out the Claim Forms.  SCS has also been in close contact with Lead Counsel to review the administration process.  SCS's Report of Claims Administrator is annexed hereto as **Exhibit A** and described below.

---

[2] SCS has not processed any claims filed after November 16, 2022, or any responses to rejections received after January 11, 2023, due to extreme lateness and because their inclusion would have delayed the finalization of the administration.

7.      The annexed Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

a.      PROPERLY DOCUMENTED CLAIMS:  SCS has identified 963[3] properly documented valid claims.  These valid claims represent Recognized Losses of $22,292,964.71[4]. These valid claims were calculated in the manner set forth in the Court-approved Plan of Allocation of the Net Settlement Fund ("Plan of Allocation"), included in the Notice. **Exhibit B-1** is a spreadsheet of the 954 properly documented and timely submitted claims.  **Exhibit B-2** is a spreadsheet of the 9 claims submitted after the Court-approved claims filing deadline, October 31, 2022, and on or before November 16, 2022.

b.      INADEQUATELY DOCUMENTED CLAIMS:  SCS initially identified 100 inadequately documented claims.  SCS mailed or emailed inadequacy notices to each of these claimants, advising them of the nature of their inadequacy and providing them an opportunity to cure.  A sample inadequacy notice is annexed hereto as **Exhibit C**.  Among these 100 deficient claims, 60 have been successfully cured and are considered valid.  The remaining 40 inadequate claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were sent a rejection notice setting forth the reason for their inadequacy.  To date, none of the 40 inadequate claimants has objected to or contested this determination.  *See* **Exhibit D** for a list of the inadequate, rejected claimants.

c.      INELIGIBLE CLAIMS:  In addition to the 40 claims discussed above in paragraph 7.b., SCS has identified 631 claims which we recommend for complete rejection.

---

[3] This number includes 954 timely filed valid claims and 9 late but otherwise valid claims.
[4] This amount includes Recognized Losses for timely filed, valid claims of $21,830,391.34 and Recognized Losses for late (but otherwise valid) claims of $462,573.37.

Included in this category are: (i) claims with no Recognized Losses; (ii) claims with common stock of Intrusion, Inc. ("Intrusion") purchased outside of the Settlement Class Period; (iii) claims with common stock of Intrusion that were not purchased or otherwise acquired, but were received or granted by gift, inheritance, or operation of law; (iv) duplicate claims; (v) claims with shares sold short; (vi) claims with securities other than Intrusion common stock; and (vii) fraudulent claim. *See* **Exhibit E** for a list of these ineligible claims. We have communicated with these 631 claimants and advised them of our determination. A sample ineligibility notice is annexed hereto as **Exhibit F**. To date, none of these ineligible claimants has contested their determination.

8.      In anticipation of completing this administration, SCS respectfully requests that the Court reject as untimely any claims received after November 16, 2022, and any responses to deficiency and/or rejection notices received after January 11, 2023.

9.      Should the Court concur with SCS's administrative determinations concerning the claims recommended for acceptance and rejection, SCS recommends the following:

(a)      Per the Plan of Allocation, each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Loss bears to the total Recognized Losses of all 954 Authorized Claimants and 9 late claims, if the late claims are deemed valid by the Court. No distribution will be made on a claim where the potential distribution amount is less than $10.00 in cash.

(b)      In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks should bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-

5

DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Similarly, all other checks issued in connection with subsequent distributions shall bear the same notation.

(c)      If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants; (ii) second, to pay any additional Notice and Administration Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to a non-profit charitable organization(s) selected by Lead Counsel.

(d)      Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. The funds allocated to all such stale-dated checks will be available for re-

distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible.

(e)    SCS respectfully requests the Court order that: (i) in no less than one (1) year after the Distribution of the Net Settlement Fund, we may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, we may destroy the electronic copies of the Claim Forms and all supporting documentation. This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 20th day of February 2023, in Media, Pennsylvania.

_____
Josephine Bravata